# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| G&G, LLC<br>8756 Lewinsville Rd.<br>McLean, VA 22102 | : <br> : <br> : <br> : |
| Plaintiff, | : <br> : <br> : |
| v. | :     Case No. _____ |
| JAMES L. HYDE<br>4232 Diana Way<br>Salt Lake City, UT 84124 | : <br> : <br> : <br> : |
| VERDI WHITE, III<br>2268 Brentwood Circle<br>Salt Lake City, UT 84109 | : <br> : <br> : <br> : |
| DOYLE JUDD<br>1043 Stonewall Court<br>Sandy, UT 81092 | : <br> : <br> : <br> : |
| CRAIG COX<br>1224 E. Raymond Rd.<br>Fruit Heights, UT 84108 | : <br> : <br> : <br> : |
| TIM WEILAND<br>4046 Cimarron<br>Cedar Hills, UT 84062 | : <br> : <br> : <br> : |
| BRAND EQUITY VENTURES II, LP<br>Serve Registered Agent:<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange St.<br>Wilmington, DE 19801 | : <br> : <br> : <br> : <br> : <br> : <br> : |
| WALNUT INVESTMENT PARTNERS, LP<br>Serve Registered Agent:<br>PHS Corporate Services, Inc.<br>1313 N. Market St., Suite 5100<br>Wilmington, DE 19801 | : <br> : <br> : <br> : <br> : |

WALNUT PRIVATE EQUITY FUND, LP  :
Serve Registered Agent:                 :
The Corporation Trust Company           :
Corporation Trust Center                :
1209 Orange St.                         :
Wilmington, DE 19801                    :
                                        :
THE WALNUT GROUP                        :
Serve Registered Agent:                 :
Diamond State Corporate Agents, Inc.    :
120 N. Broom St.                        :
Wilmington, DE 19806                    :
                                        :
MILLEVERE HOLDINGS LIMITED              :
La Motte Chambers                       :
St. Heller, Jersey JE1 1BJ Channel Islands  :
                                        :
DANIEL YARNELL                          :
263 Tresser Blvd., 16th Floor           :
Stamford, CT 06901                      :
                                        :
JAMES GOULD                             :
312 Walnut St., Suite 1151              :
Cincinnati, OH 45202                    :
                                        :
SIMON WRIGHT                            :
5757 Wilshire Blvd., Suite 300          :
Los Angeles, CA 90036                   :
                                        :
WALT SPOKOWSKI                          :
155 North 400 West, Suite 52            :
Salt Lake City, UT 84103                :
                                        :
WILSON SONSINI GOODRICH &               :
       ROSATI, PC                       :
Serve Registered Agent:                 :
Donald E. Bradley                       :
650 Page Mill Road                      :
Palo Alto, CA 94304-1050                :

LILY C. WONG LANGEN                         :
Wilson Sonsini Goodrich & Rosati, PC        :
2795 East Cottonwood Parkway                :
Suite 300                                   :
Salt Lake City, UT 84121                    :
                                            :
            Defendants.                     :
_____     :

## COMPLAINT

G&G, LLC ("G&G"), by and through counsel, Zuckerman Spaeder LLP and Stinson

Morrison Hecker LLP, as its Complaint against James L Hyde, Verdi White, III, Doyle Judd,

Craig Cox, Tim Weiland, Brand Equity Ventures II, LP, Walnut Investment Partners, LP,

Walnut Private Equity Fund, LP, The Walnut Group, Millevere Holdings Limited, Daniel

Yarnell, James Gould, Simon Wright, Walt Spokowski, Wilson Sonsini Goodrich & Rosati, PC

and Lily C. Wong Langen, respectfully states the following:

## NATURE OF THE ACTION

1.      This action arises out of a loan from G&G to a Utah corporation, The LoveSac

Corporation ("LoveSac Utah"), which was secured by LoveSac Utah's inventory and personal

property.  LoveSac Utah subsequently obtained new financing and fraudulently failed to notify

G&G that it had effectuated a merger ("Merger") with, and had transferred all of its assets to, a

Delaware Corporation, the LoveSac Corporation ("LoveSac Delaware").  After the Merger, the

officers and directors of both LoveSac Utah and LoveSac Delaware, along with their attorneys,

fraudulently represented to G&G that LoveSac Utah was an ongoing entity.  As a result of the

fraud, G&G failed to perfect its security interest in the State of Delaware.  G&G only learned of

the Merger and transfer of assets after LoveSac Delaware filed a petition under Chapter 11 of the

U.S. Bankruptcy Code in March 2006.   G&G then filed a Complaint in the U.S. Bankruptcy

Court for the District of Delaware, which was dismissed for lack of subject matter jurisdiction.

## JURISDICTION AND VENUE

2.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a)(1) because this

action is between citizens of different states and the amount in controversy exceeds $ 75,000.00.

3.      The Court has personal jurisdiction over James L. Hyde, Doyle Judd, Verdi

White, III, Tim Weiland and Walt Spokowski  because they were officers of LoveSac Delaware,

a Delaware corporation.

4.      The Court has personal jurisdiction over Craig Cox, Daniel Yarnell, James Gould,

Verdi White, III and Simon Wright because they were directors of LoveSac Delaware, a

Delaware corporation.

5.      The Court has personal jurisdiction over Walnut Investment Partners, LP, Walnut

Private Equity Fund, LP, and The Walnut Group because they are entities formed under the laws

of the State of Delaware.

6.      The Court has personal jurisdiction over Brand Equity Ventures II, LP because it

is a foreign corporation authorized to do business in the State of Delaware.

7.      The Court has personal jurisdiction over Millevere Holdings Limited, Wilson

Sonsini Goodrich & Rosati, PC and Lily C. Wong Langen because they transact business or

perform work or services in the State of Delaware.

8.      All Defendants were parties to the action in the Delaware Bankruptcy Court and

none objected to the Court's exercise of personal jurisdiction.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) and (3).

## PARTIES

10.     Plaintiff G&G is a Virginia Limited Liability Company, with its principal place of business in McLean, Virginia.  Trent Gourley is a principal of G&G.

11.     Defendant Verdi White is a resident of the State of Utah and an officer and director of LoveSac Utah and LoveSac Delaware.   This suit is brought against White pursuant to an Order of the United States Bankruptcy Court for the District of Utah authorizing G&G to pursue to judgment its claims against White and to collect from the proceeds of any insurance covering White's obligations to G&G.  A copy of the Order is attached as Exhibit A.

12.     Defendant James Hyde is a resident of the State of Utah and an officer and/or director of LoveSac Utah and LoveSac Delaware.

13.     Defendant Doyle Judd is a resident of the State of Utah. He was the Treasurer of LoveSac Utah, and the Chief Financial Officer of LoveSac Utah and LoveSac Delaware from 2003 until April 19, 2006.

14.     Defendant Walt Spokowski is a resident of the Commonwealth of Massachusetts and the Interim Chief Executive Officer of LoveSac Delaware.

15.     Defendant Tim Weiland is a resident of the State of Utah, the Treasurer of LoveSac Delaware and was the Chief Retail Officer of LoveSac Utah and LoveSac Delaware. until shortly before the bankruptcy filing.

16.     Defendant Craig Cox is a resident of the State of Utah and a director of LoveSac LoveSac Utah and LoveSac Delaware.

17.     Defendant Brand Equity Ventures, II, LP ("Brand Equity") is a Connecticut limited partnership with its principal place of business in Greenwich, Connecticut.  Brand Equity is the owner of 27.72 % of the stock of LoveSac Delaware.

18.     Defendant Walnut Investment Partners, LP ("Walnut Investment") is a Delaware limited partnership with its principal place of business in Cincinnati, Ohio.  Walnut Investment is the owner of 18.48% of the stock of LoveSac Delaware.

19.     Defendant Walnut Private Equity Fund, LP, ("Walnut Private Equity") is a Delaware limited partnership with its principal place of business in Cincinnati, Ohio.   Walnut Private Equity is the owner of 9.24% of the stock of LoveSac Delaware.

20.     The Walnut Group ("Walnut Group") is an Ohio Corporation, with its principal place of business in Cincinnati, Ohio.  The Walnut Group controls Walnut Investment and Walnut Private Equity.

21.     Defendant Millevere Holdings Limited ("Millevere") is a foreign corporation doing business in the State of Delaware without State authority.

22.     Defendant David Yarnell is a resident of the State of Connecticut, a Director of LoveSac Delaware and the managing general partner of Brand Equity.

23.     Defendant James Gould is a resident of the State of Ohio, a Director of LoveSac Delaware and the managing general partner of the Walnut Group.

24.     Defendant Simon Wright is a resident of California and a Director of LoveSac Delaware.

25.     Defendant Wilson Sonsini Goodrich & Rosati, PC ("Wilson Sonsini") is a professional corporation organized in the state of California, which also has offices in the State of Utah.

26.     Defendant Lily C. Wong Langen ("Langen") is a resident of  California and/or Utah and worked in both the California and Utah offices of Wilson Sonsini.

## STATEMENT OF FACTS

27.     In September 2003, LoveSac Utah approached G&G for a loan to finance its day-to-day operations.

28.     On October 30, 2003, LoveSac Utah executed a Revolving Line of Credit with G&G, which was evidenced by a Revolving Credit Line Deed of Trust Note ("Note") in the amount of $ 2.8 million.  The Note was secured by a Revolving Credit Line Deed of Trust, Fixture Filing and Security Agreement, Assignment of Leases and Rents ("Deed of Trust Documents").

29.     Under the terms of the Note, LoveSac Utah could borrow up to $ 2.8 million through a line of credit secured, in part, by real property located in Weber County, Utah.

30.     In connection with the Note and Deed of Trust, LoveSac Utah also executed the Security Agreement and Assignment of Interest, Contracts, Plans, Profits, Intangibles, Inventory, Equipment, Permits and Licenses ("Security Agreement") granting G&G a first position, blanket lien on borrower's personal property ("Collateral").   The secured interest was properly perfected upon the filing of financing statements in Utah.

31.     As further security for the loan, Defendants Hyde and White, along with Shawn Nelson and Scott McDonough ("the Guarantors") executed an Unconditional Guaranty Agreement pursuant to which they each jointly and severally, and unconditionally, personally guaranteed repayment of the Loan.

32.     In addition, the Guarantors entered into a Stock Pledge, Assignment and Security Agreement ("Stock Pledge Agreement") pursuant to which 80% of the outstanding shares of LoveSac Utah were pledged to G&G.  LoveSac Utah acknowledged the Stock Pledge Agreement.

33.    The shares of stock that were pledged to G&G were endorsed in blank, and transferred to G&G. The stock certificates have been held continuously in G&G's attorneys' safe since delivery to G&G.

34.    G&G and LoveSac Utah also entered into a Loan Disbursement Agreement on October 28, 2003, which governed advances under the Loan.

35.    In reliance on an appraisal and all representations of the borrower and its agents, and the Guaranty and Stock Pledge, G&G advanced loans to LoveSac Utah in the total amount of $ 2.8 million.

36.    In 2004, LoveSac Utah attempted to secure further financing. Upon information and belief, the Walnut Group organized a group of investors composed of Walnut Investment, Walnut Private Equity, Brand Equity and Millevere ("Investor Defendants").

37.    In November 2004, a representative of the Walnut Group, acting on behalf of the Investor Defendants, telephoned Trent Gourley and stated that the Investor Defendants intended to invest $ 8-11 million in LoveSac Utah. The representative asked whether G&G would be willing to release its stock and subordinate its security interest in the inventory. Gourley informed the representative that G&G would not release the stock and would take no action that would impair its lien position.

38.    After G&G refused to subordinate its security interest in the LoveSac Collateral, the Investor Defendants insisted on the Merger taking place. On December 7, 2004, the Board of Directors of LoveSac Utah adopted resolutions to effect a Merger with LoveSac Delaware. From the inception of their relationship with LoveSac Utah through the date of LoveSac Delaware bankruptcy filing, the Investor Defendants controlled LoveSac Utah, LoveSac Delaware and the officer/director defendants in this action.

38.     On January 20, 2005, Doyle Judd, identifying himself as "LoveSac's CFO" sent an e-mail to a representative of G&G that stated "LoveSac is in the final stages of completing a significant equity financing. If consummated, proceeds from this transaction will be used to payoff LoveSac's loan with Gourley & Gourley."

39.     On January 28, 2005, Doyle Judd, identifying himself as "LoveSac's CFO,"sent an e-mail to a representative of G&G that stated, "[w]e are still waiting for a couple of things to come together before we can close on our financing, which will be used to pay off our loan to you. Thus, the payoff will not happen today as we had initially planned. All parties are pushing for a closing next week, dependent, of course, on all open items being resolved." G&G's loan to LoveSac Utah was never paid off.

40.     Brand Equity, Walnut Investment, Walnut Partners, and Millevere subsequently invested $ 8-11 million in either LoveSac Utah or LoveSac Delaware in exchange for which the Investor Defendants received over 83% of the shares of LoveSac Delaware following the Merger.

41.     In consideration of its contribution to LoveSac Delaware, Brand Equity received 27.72% of LoveSac Delaware's stock.

42.     In consideration of their contributions to LoveSac Delaware, Walnut Investment received 18.48% of LoveSac Delaware's stock and Walnut Private Equity received 9.24% of LoveSac Delaware's stock.

43.     In consideration of its contribution to LoveSac Delaware, Millevere Limited received 27.72% of LoveSac Delaware's Stock.

44.     In consideration of their contributions to LoveSac Delaware, the Investor Defendants, through their representatives Defendants Yarnell, Gould, and Wright, joined the Board

of Directors of LoveSac Delaware. The Investor Defendants controlled the Board of Directors and

had 75% of the voting power of the Board.

45.     G&G was not informed of the change in the composition of the Board of Directors

or the control and voting power of the Investor Defendants on the Board of Directors. G&G only

leaned of the changes after the filing of the bankruptcy petition.

46.     In consideration for the contributions from the Investor Defendants, the Investor

Defendants insisted that the Merger take place and that LoveSac Utah reincorporate in Delaware.

47.     On February 4, 2005, a conference call occurred between a representative of G&G,

Doyle Judd, and John Bernloehr of The Walnut Group. Mr. Judd and Mr. Bernloehr sought to

discuss the extension of the G&G Loan for another year or year and a half with a reduction in

interest rate. The rationale provided by Mr. Bernloehr was that after the capital investment, G&G

would have a significantly capitalized borrower and a plan to pay off the G&G loan in

approximately one year.

48.     Although LoveSac Utah filed merger documents in Delaware on February 25, 2005,

it failed to give notice of the Merger to G&G, as required by the Note. G&G had no knowledge of

the Merger until March, 2006, when it learned of the Merger after LoveSac Delaware's bankruptcy

filing. In addition, G&G was never notified of the transfer of control to the Investor Defendants, or

the transfer of assets from LoveSac Utah to LoveSac Delaware, prior to the filing of the bankruptcy

petition.

49.     Upon information and belief, all of the Defendants acted in unison, without dissent,

in failing to notify G&G of the Merger.

50.     After the Merger, LoveSac Delaware continued to transact business as, and in the

name of, LoveSac Utah.

51.     The following leases were entered into in the name of LoveSac Utah after the

Merger:

- June 17, 2005 with GGP-Glenbrook LLC, a Delaware limited liability company,

- December 20, 2005 with Rockaway Center Associates, a New Jersey limited partnership,

- December 21, 2005 with The Retail Property Trust, a Massachusetts business trust, and

52.     On January 3, 2006, a Lease Termination Agreement with Oak View Mall, L.L.C., a Delaware Limited Liability Company, was executed in the name of LoveSac Utah.

53.     Upon information and belief, there could be other transactions after the Merger in the name of LoveSac Utah of which G&G is unaware at this time.

54.     On July 11, 2005 and July 18, 2005, Doyle Judd and Scott McDonough requested advances on the existing credit facility with G&G using the same company letterhead as utilized before the Merger. In the requests, neither Mr. Judd nor Mr. McDonough mentioned the Merger or a transfer of assets from LoveSac Utah to LoveSac Delaware.

55.     On or about September 12, 2005, the Investor Defendants recorded financing statements with the Delaware Secretary of State purporting to grant the Investor Defendants a lien on all of LoveSac Delaware's inventory, accounts, general intangibles including commercial tort claims, cash, investment property and chattel paper and all equipment and fixtures.

56.     On or about September 19, 2005, the Investor Defendants recorded additional financing statements with the Delaware Secretary of State, which state that the Investor Defendants secured three 15% Secured Promissory Bridge Notes with all of LoveSac Delaware's inventory, accounts, general intangibles including commercial tort claims, cash, investment property and chattel paper and all equipment and fixtures.

57.    The original maturity date of the Note was November 1, 2005. Prior to that time, but after the Merger, LoveSac Delaware, representing itself as LoveSac Utah, approached G&G about extending the maturity date of the loan. LoveSac Delaware never disclosed that LoveSac Utah had merged into LoveSac Delaware and had transferred all of its assets to LoveSac Delaware.

58.    On October 6, 2005, Doyle Judd sent an e-mail to a representative of G&G that stated "[i]t is my recollection that John Bernloehr from the Walnut Group (one of the firms invested in LoveSac) had previously spoken with Trent about an extension. I am sure John will be speaking with Trent again soon."

59.    On October 6, 2005, the representative of G&G sent an e-mail to Doyle Judd that stated "[i]f John Bernloehr is the contact person handling this for LoveSac or the person designated to make a decision please forward a copy of the notice to him."

60.    On October 6, 2005, Doyle Judd sent an e-mail to a representative of G&G that replied "John and I will be working on this together."

61.    On October 14, 2005, Doyle Judd, as LoveSac's CFO, sent an e-mail to a representative of G&G that stated "I wanted to let you know that LoveSac does intend to extend its note with Gourley & Gourley. It is my understanding that John Bernloehr has been in contact with you to set up a call with Trent to finalize the terms of the extension. We appreciate your willingness to continue your financial support of LoveSac."

62.    On October 18, 2005, Mr. Bernloehr sent an e-mail to representatives of G&G setting forth "his thoughts" on the renewal of the existing line of credit for LoveSac Corporation. He also indicated that he was attaching a bank statements demonstrating the investment by Walnut Investment Partners, Brand Equity Ventures and Millevere. Mr. Bernloehr further requested an extension of G&G's Loan until June 2006. Mr. Bernloehr then stated: "Gourley & Gourley's

collateral position is well secured with the first lien on LoveSac's assets and the pledge of the Salt Lake real estate, coupled with the significant capital invested by Walnut, BEV, and Millevere."

63.    In the October 18, 2005 e-mail, Mr. Bernloehr does not mention the Merger, or the fact that the assets of LoveSac Utah are non-existent because they have been transferred to LoveSac Delaware. He sent this e-mail a month after the Investor Defendants recorded their financing statements in Delaware.

64.    On October 25, 2005, Langen sent an e-mail to counsel for G&G regarding the terms and conditions of a Loan extension and requested a forbearance while the LoveSac Corporation and G&G reached a satisfactory arrangement regarding the extension.

65.    On November 1, 2005, Langen sent an e-mail to counsel for G&G seeking to confirm the extension agreement between G&G and The LoveSac Corporation. Langen states that she will provide requested financials and projects upon confirmation of the renewal agreement between the parties. In this e-mail, Langen refers to a settlement of terms for an extension reached between G&G and Paul Chalmers, of counsel for Wilson Sonsini.

66.    On November 2, 2005, Langen sent an e-mail to counsel for G&G to further discuss the conditions of an extension of the G&G loan.

67.    On November 3, 2005, counsel for G&G sent an e-mail to Langen setting forth G&G's final offer to extend the Loan term.

68.    On November 4, 2005, Langen sent an e-mail to counsel for G&G stating that the LoveSac Corporation was prepared to accept the final offer with a change in the payment curtailment schedule.

69.    On November 7, 2005, Mr. Bernloehr called Trent Gourley of G&G to discuss the Loan extension to LoveSac Utah.

70.    On November 7, 2005, Mr. Bernloehr, sent Mr. Gourley a facsimile with "The Walnut Group" letterhead that stated that the LoveSac Corporation would agree to the terms of a renewal if certain modifications to the terms were made by G&G. At no time did Mr. Bernloehr disclose the Merger or the transfer of assets from LoveSac Utah to LoveSac Delaware to G&G.

71.    On November 7, 2005, Langen sent an e-mail to counsel for G&G that stated that the LoveSac Corporation accepted the final offer set forth in the November 3, 2005 e-mail.

72.    In response to requests for financial information about the borrower of the Loan (LoveSac Utah), on November 9, 2005, Langen sent an e-mail to counsel for G&G and attached for G&G's review various documents including LoveSac Equity Structure, the LoveSac FY2005-06 Operating Plan, the LoveSac FY 2006-07 Operating Plan, the LoveSac Business Plan, and the financial statements for Period 8 of the current fiscal year (the most recent published operating statement and balance sheet).

73.    None of the documents provided by Langen on November 9, 2005 indicated there had been a Merger or a transfer of assets from LoveSac Utah.

74.    The documents provided to G&G in response to the request for financial documents of the borrower of the Loan (LoveSac Utah) were false and did not contain financial information and stock ownership related to LoveSac Utah.

75.    In response to a question raised by counsel for G&G regarding the Equity Structure provided on November 9, 2005, Langen sent an e-mail dated November 14, 2005 to counsel for G&G that provided LoveSac's explanations and attached a "Common Stock Ledger" indicating a 10 for 1 stock split and a later 30 for 1 reverse stock split at the time of the equity infusion from the Series A Preferred Stock investors. The "Common Stock Ledger" refers to "The LoveSac Corporation" and provides that G&G continues to hold its stock interests as previously represented.

76.     G&G agreed to an extension of the loan, upon certain conditions, and on November 15, 2005, the First Omnibus Amendment to Loan Documents ("Loan Amendment") was executed. The Loan Amendment was prepared by G&G's counsel and refers to the LoveSac Corporation as a Utah Corporation.  That Loan Amendment was reviewed by and edited by Wilson Sonsini. Subsequent to closing, G&G received a Corporate Resolution, drafted by Wilson Sonsini, that authorizes the Loan Amendment and refers to the LoveSac Corporation as a Delaware Corporation.

77.     On November 15, 2005, counsel for G&G sent the revised First Omnibus Modification of Loan Documents to Langen with the two minor revisions requested by Langen after her review of the document.  The two revisions did not include changing the name of the borrower from LoveSac Utah to LoveSac Delaware or otherwise advising that LoveSac Utah, at that point in time, had participated in a Merger and had transferred assets.

78.     On November 15, 2005, after G&G declined to subordinate or release its lien, Defendant Wilson Sonsini, acting on behalf of LoveSac Utah and LoveSac Delaware and the other Defendants affirmatively represented to G&G that G&G still held validly issued and outstanding shares of stock.

79.     On November 15, 2005, Langen sent an e-mail to counsel for G&G and copied to Mr. Bernloehr of The Walnut Group stating that "the stock certificates you are currently holding have not been cancelled and remain issued and outstanding and LoveSac's records have been noted these certificates are pledged to G&G."

80.     On January 25, 2006, LoveSac Delaware filed a Second Amended and Restated Certificate of Incorporation with the Delaware Secretary of State.

81.     On January 30, 2006, LoveSac Delaware filed for protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

82.     LoveSac Delaware and its creditors succeeded in subordinating G&G's position on the ground that G&G's lien was not reperfected following the alleged Merger.

83.     From the time LoveSac Utah approached G&G about a lending relationship through the time of the Merger, LoveSac Utah was insolvent.

84.     From the Merger through the bankruptcy filing, LoveSac Delaware was insolvent.

85.     At LoveSac Delaware's 341 meeting, Defendant Judd's testimony supported the conclusion that LoveSac Utah and LoveSac Delaware were insolvent throughout their existence. He testified that as of December 2004, "we came back and said, well, not only is the company worth nothing, you pledged your stock to secure a note, which is now in default. So our position is one, the company has no value at this point in time…"

86.     Judd similarly testified that in January and February 2005, LoveSac Delaware was "out of money." He elaborated by giving the historical perspective that "the company was strictly hand to mouth. I mean, they'd go out and borrow money, and then spend it, and then go borrow some more," and that "we worked on getting some conventional money through a bank. We couldn't get that done. Simply, we were not bankable."

87.     In response to the question "when was the last profitable year for this company?" Judd responded "[t]here never has been one that I know of. Maybe in 2001-2002, they may have shown a profit. I guess I would urge a question that would be subject to some suspicion because of the condition of the records."

88.     Judd also testified that "this was kind of the condition of the company a year and a half ago, no real systems, no real controls, but a group of young people who were good intentioned but lacking in business experience."

89.     After describing the events in the last quarter of 2005, Judd testified that "come 2006, we simply did not have enough cash or enough prospect of receiving cash to meet all of the obligations that we had."

90.     On January 30, 2006, the Debtors filed an "Affidavit of Doyle Judd in Support of Chapter 11 Petitions and First Day Pleadings."  In the Affidavit, at paragraph 8, Mr. Judd, as Chief Financial Officer of the LoveSac Corporation, states: "For the fiscal year ended January 29, 2006, the Debtors generated a combined net loss of approximately $7.0 million (including estimated asset impairment writedowns of approximately $3.0 million) on approximately $20.0 million in revenues. As of January 29, 2006, the Debtors had approximately $11.5 million is assets and approximately $14.5 million in liabilities on a consolidated basis."

## COUNT I-FRAUD
### (Hyde, White, Judd, Cox, Weiland, Spokowski, Yarnell, Gould, and Wright)

91.     Plaintiff incorporates by reference paragraphs 1-90 as if fully set forth herein.

92.     Defendants Hyde, White, Judd, Cox, Weiland, Spokowski, Yarnell, Gould, and Wright, who were each officers and/or directors of LoveSac Utah and/or LoveSac Delaware, knew that following the Merger, LoveSac Utah was no longer an existing entity, but knowingly, falsely and intentionally represented to G&G and to others that LoveSac Utah was an ongoing concern.

93.     Defendants Hyde, White, Judd, Cox, Weiland, Spokowski, Yarnell, Gould, and Wright, falsely and with reckless abandon and disregard for the truth, and/or intentionally, misrepresented that LoveSac Utah was an ongoing concern by executing documents in the name of LoveSac Utah after the Merger.

94.     Defendants Hyde, White, Judd, Cox, Weiland, Spokowski, Yarnell, Gould, and Wright intentionally misrepresented the status of LoveSac Utah in order to prevent G&G from learning of the Merger and to prevent G&G from perfecting its lien in Delaware.

95.     Defendants Hyde, White, Judd, Cox, Weiland, Spokowski, Yarnell, Gould, and Wright knew that G&G would rely on their representations and intended for G&G to rely upon their misrepresentations and be misled by the misrepresentations.

96.     In reliance on the false representations, G&G believed that LoveSac Utah was an ongoing concern and failed to perfect its security interest in Delaware.

97.     As a direct and proximate result, G&G has been unable to recover the amount of the Loan to LoveSac Utah and has sustained damages in the amount of at least $ 3,259,841.47, to be further determined at trial.

## COUNT II-CONSTRUCTIVE FRAUD
### (Hyde, White, Judd, Cox, Weiland, Spokowski, Yarnell, Gould, and Wright)

98.     Plaintiff incorporates by reference paragraphs 1-97 as if fully set forth herein.

99.     Defendants Hyde, White, Judd, Cox, Weiland, Spokowski, Yarnell, Gould, and Wright, who were each officers and/or directors of LoveSac Utah and/or LoveSac Delaware, negligently represented to G&G and to others that LoveSac Utah was an ongoing concern.

100.    Defendants Hyde, White, Judd, Cox, Weiland, Spokowski, Yarnell, Gould, and Wright, negligently represented that LoveSac Utah was an ongoing concern by executing documents in the name of LoveSac Utah after the Merger.

101.    Defendants Hyde, White, Judd, Cox, Weiland, Spokowski, Yarnell, Gould, and Wright misrepresented the status of LoveSac Utah in order to prevent G&G from learning of the Merger and to prevent G&G from perfecting its lien in Delaware.

102.    In reliance on the false representations, G&G believed that LoveSac Utah was an ongoing concern and failed to perfect its security interest in Delaware.

103.    As a direct and proximate result, G&G has been unable to recover the amount of the Loan to LoveSac Utah and has sustained damages in the amount of at least $ 3,259,841.47, to be further determined at trial.

## COUNT III-FRAUDULENT CONCEALMENT

**(Hyde, White, Judd, Cox, Weiland, Brand Equity, Walnut Investment, Walnut Private Equity, Walnut Group, Millevere, Yarnell, Gould, Wright, Spokowski, Wilson Sonsini, and Langen)**

104.    G&G incorporates by reference paragraphs 1 through 103 as if fully set forth herein.

105.    After G&G refused to voluntarily subordinate its first priority lien resulting from the G&G Loan, LoveSac Utah conducted the Merger and transferred all of its assets to LoveSac Delaware.

106.    The Merger was a material fact that was never disclosed to G&G until after the bankruptcy filing.

107.    The transfer of assets was a material fact that was never disclosed to G&G until after the bankruptcy filing.

108.    The change of control of the Board of Directors to the Investor Defendants was a material fact that was never disclosed to G&G until after the bankruptcy filing.

109.    Defendants Hyde, White, Cox, Judd, Weiland, Spokowski, Yarnell, Gould, and Wright, who were each officers and/or directors of LoveSac Utah and/or LoveSac Delaware, had knowledge of the Merger and transfer of assets but knowingly, willfully, intentionally and maliciously failed to inform G&G that the Merger and transfer of assets had taken place.

110.    Defendants Brand Equity, Walnut Investment Partners, Walnut Private Equity, Walnut Group, Millevere, Wilson Sonsini, and Langen all knew of the Merger and transfer of assets but knowingly, willfully, intentionally and maliciously failed to inform G&G that the Merger and transfer of assets had taken place.

111.    Defendants all knew that G&G was unaware of the Merger and transfer of assets and that G&G, by agreeing to the Loan Amendment and by failing to perfect its interest in Delaware, was acting on the assumption that its collateral was protected and remained in the possession of LoveSac Utah.

112.    In reliance on its belief that LoveSac Utah was an ongoing concern, G&G failed to reperfect its security interest in Delaware.

113.    Defendants failed to inform G&G of the Merger and transfer of assets, in order to induce G&G to forbear from perfecting its security interest in Delaware in a timely fashion.

114.    Defendants knew that the collateral provided as security for G&G's loan had been reduced in value but knowingly, intentionally, recklessly and maliciously failed to notify G&G that the collateral provided had been reduced in value due to the Merger.

115.    As directors of an insolvent corporation, Defendants Yarnell, Gould and Wright owed a duty of disclosure to G&G, a creditor of LoveSac Delaware.

117.    As controlling shareholders, Defendants Hyde, White, Judd, Cox, Weiland, Brand Equity, Walnut Investment, Walnut Private Equity, Walnut Group, Millevere, Yarnell, Gould, Wright and Spokowski, owed a duty of disclosure to G&G, the pledge of a minority interest.

118.    Defendants Wilson Sonsini and Langen owed a duty of disclosure to G&G because those Defendants issued assurances to G&G regarding the status of G&G's stock and collateral knowing that G&G would rely on those assurances.

119.    As a direct and proximate result of the fraudulent concealment of the Merger and transfer of assets, G&G has been unable to recover the amount of the Loan to LoveSac Utah and has sustained damages in the amount of at least $ 3,259,841.47, to be further determined at trial.

120.    As a direct result of Defendants' fraudulent concealment of the Merger and transfer of assets, G&G was unable to perfect its security interest in LoveSac Utah's and/or LoveSac Delaware's assets within the time provided by Delaware law and has been unable to collect the Loan.  As a result, G&G has suffered damages in the amount of at least $ 3,259,841.47, to be further determined at trial.

## COUNT IV- CONVERSION
### (Hyde, White, Judd, Cox, Weiland, Brand Equity, Walnut Investment, Walnut Private Equity, Walnut Group, Millevere, Yarnell, Gould, Wright, Spokowski)

121.    G&G incorporates by reference paragraphs 1 through 120 as if fully set forth herein.

122.    The 1,386,000 shares of LoveSac Utah stock pledged to G&G as security for the Loan, have continuously been in the lawful possession of G&G.

123.    Defendants Hyde, White, Judd, Cox, Weiland, Brand Equity, Walnut Investment, Walnut Private Equity, Walnut Group, Millevere, Yarnell, Gould, Wright, Spokowski effectuated the Merger, they willfully and intentionally failed to inform G&G of the Merger and then willfully and intentionally failed to issue shares in LoveSac Delaware to G&G.

124.    Defendants Hyde, White, Judd, Cox, Weiland, Brand Equity, Walnut Investment, Walnut Private Equity, Walnut Group, Millevere, Yarnell, Gould, Wright, and Spokowski willfully and intentionally failed to issue shares in LoveSac Delaware to G&G so that G&G would be unable to recover in the event that LoveSac defaulted in its obligations to G&G.

125.    G&G had a properly perfected blanket lien on all of the personal property of LoveSac Utah.

126.    In effectuating the Merger and transfer of assets, Defendants Hyde, White, Judd, Cox, Weiland, Brand Equity, Walnut Investment, Walnut Private Equity, Walnut Group, Millevere, Yarnell, Gould, Wright, and Spokowski willfully and intentionally exercised control and dominion over G&G's collateral so that G&G would be unable to recover in the event that LoveSac defaulted in its obligation to G&G.

127.    As a result of Defendants' failure to exchange the stock held by G&G for stock in LoveSac Delaware and as a direct result of the transfer of LoveSac Utah's personal property collateral to LoveSac Delaware, the Plaintiff has been unable to collect on its Note, deprived of the use of the shares and other personal property as Collateral for the Loan to LoveSac Utah and has suffered damages in the amount of at least $ 3,259,841.47, to be further determined at trial.

## COUNT V– CIVIL CONSPIRACY
**(Hyde, White, Judd, Cox, Weiland, Brand Equity, Walnut Investment, Walnut Private Equity, Walnut Group, Millevere, Yarnell, Gould, Wright, Spokowski)**

128.    G&G incorporates by reference paragraphs 1 through 127 as if fully set forth herein.

129.    Beginning at least as early as January 2005 and continuing through the bankruptcy filing, Defendants Hyde, White, Judd, Weiland, Cox, Brand Equity, Walnut Group, Walnut Investment, Walnut Private Equity, Millevere, Yarnell, Gould, Wright, and Spokowski agreed to defraud G&G by merging LoveSac Utah into LoveSac Delaware and transferring all of LoveSac Utah's assets to LoveSac Delaware, without notice to G&G.

130.    Defendants Hyde, White, Judd, Weiland, Cox, Brand Equity, Walnut Group, Walnut Investment, Walnut Private Equity, Millevere, and Spokowski agreed to defraud G&G

by concealing the Merger from G&G until it was too late for G&G to perfect its security interest in LoveSac Delaware's personal property.

131.    The conspiracy injured G&G by depriving G&G of its first priority security interest in all of the Debtor's assets.

132.    As a direct and proximate result of the conspiracy, G&G has been unable to recover the amount it loaned to LoveSac Utah and has suffered damages in the amount of at least $ 3,259,841.47, to be further determined at trial.

**COUNT VI – VIRGINIA STATUTORY BUSINESS CONSPIRACY –**
**(Va. Code Ann. §§ 18.2-499 and 18.2-500)**
**(Hyde, White, Judd, Cox, Weiland, Brand Equity, Walnut Investment, Walnut Private Equity, Walnut Group, Millevere, Yarnell, Gould, Wright, Spokowski)**

133.    G&G incorporates by reference paragraphs 1 through 132 as if fully set forth herein.

134.    Defendants Hyde, White, Judd, Weiland, Cox, Brand Equity, Walnut Group, Walnut Investment, Walnut Private Equity, Millevere, Yarnell, Gould, Wright, and Spokowski willfully and maliciously agreed to defraud G&G by merging LoveSac Utah into LoveSac Delaware and transferring all of LoveSac Utah's assets to LoveSac Delaware, without notice to G&G.

135.    Defendants Hyde, White, Judd, Weiland, Cox, Brand Equity, Walnut Group, Walnut Investment, Walnut Private Equity, Millevere, Yarnell, Gould, Wright, and Spokowski willfully and maliciously agreed to harm G&G's trade and business by defrauding it of its collateral and its ability to collect the amounts loaned to LoveSac Utah and to advance the interests of the insider Investor Defendants ahead of those of G&G.

136.    Defendants Hyde, White, Judd, Weiland, Cox, Brand Equity, Walnut Group, Walnut Investment, Walnut Private Equity, Millevere, Yarnell, Gould, Wright, and Spokowski willful and malicious agreements caused G&G damage and harm in the amount of at least $ 3,259,841.47, to be further determined at trial.

## COUNT VII-NEGLIGENT MISREPRESENTATION
### (Wilson Sonsini and Langen)

137.    Plaintiff incorporates by reference paragraphs 1 through 136 as if fully set forth herein.

138.    Defendant Wilson Sonsini was the law firm that handled the financing, which LoveSac Utah and LoveSac Delaware obtained from Brand Equity, Walnut Investment, Walnut Private Equity, Millevere and The Walnut Group.

139.    Defendant Wilson Sonsini also represented LoveSac Utah and/or LoveSac Delaware and/or the Investor Defendants regarding the refinancing of the G&G Note.

140.    Pursuant to such representation, Wilson Sonsini and Langen had a pecuniary interest in the refinancing of the G&G Note as they were paid for their services. In addition, as a result of their representation related to the financing from the Investor Defendants, Wilson Sonsini and Langen were in a superior position to know material facts regarding LoveSac Utah's finances and structure.

141.    Documents prepared by Defendant Wilson Sonsini and Langen and forwarded by Wilson Sonsini to G&G, carelessly or negligently misrepresented that LoveSac Utah was an ongoing concern after February 2005. Wilson Sonsini and Langen made the misrepresentation without reasonable grounds for believing that the representation was true.

142.    The representation that LoveSac Utah was an ongoing concern after February 2005 was a false representation of a material fact.

143.    Defendant Wilson Sonsini and Langen knew that over 83% of the stock in LoveSac Delaware had been issued to Defendants Brand Equity, Walnut Investments, Walnut Private Equity and Millevere.

144.    In an e-mail dated November 15, 2005, Langen, an attorney employed by Wilson Sonsini and acting on behalf of Wilson Sonsini, innocently or negligently misrepresented to G&G, that "the stock certificates you are currently holding have not been cancelled and remain issued and outstanding." Langen made the misrepresentation without reasonable grounds for believing that the representation was true.

145.    In response to requests for financial information about the borrower of the Loan (LoveSac Utah), on November 9, 2005, Langen sent an e-mail to counsel for G&G and attached for G&G's review various documents including LoveSac Equity Structure, the LoveSac FY2005-06 Operating Plan, the LoveSac FY 2006-07 Operating Plan, the LoveSac Business Plan, and the financial statements for Period 8 of the current fiscal year (the most recent published operating statement and balance sheet).

146.    None of the documents provided by Langen on November 9, 2005 indicated there had been a Merger or a transfer of assets from LoveSac Utah or a change of control of the Board of Directors.

147.    The documents provided to G&G in response to the request for financial documents of the borrower of the Loan (LoveSac Utah) were false and did not contain financial information and stock ownership related to LoveSac Utah.

148.    The content of the documents provided on November 9 by Langen and Wilson Sonsini were false representations of material facts. Langen provided the documents which

contained the misrepresentation without reasonable grounds for believing that the representations contained in the documents were true.

149.    Defendants Wilson Sonsini and Langen owed a duty to G&G to provide accurate information because Wilson Sonsini knew or should have known that G&G would rely on the information provided by Wilson Sonsini.

150.    Defendants Wilson Sonsini and Langen breached that duty by providing false information to G&G regarding the status of LoveSac Utah and the stock certificates issued to G&G by LoveSac Utah. Defendants Wilson Sonsini and Langen made the misrepresentations with the intent that G&G would rely upon them to extend the Note and enter into the Loan Amendment and that G&G would be misled by the misrepresentations.

151.    In justifiable and reasonable reliance on the misrepresentations of Defendants Wilson Sonsini and Langen, G&G did not perfect its interest in the assets of LoveSac Delaware and is unable to recover the money loaned to LoveSac Utah.

152.    As a direct and proximate result of the misrepresentations G&G has suffered damages in the amount of at least $3,259,841.47, to be further determined at trial.

## COUNT VIII-CONSTRUCTIVE FRAUD
### (Wilson Sonsini and Langen)

153.    Plaintiff incorporates by reference paragraphs 1 through 152 as if fully set forth herein.

154.    Defendant Wilson Sonsini was the law firm that handled the financing, which LoveSac Utah and LoveSac Delaware obtained from Brand Equity, Walnut Investment, Walnut Private Equity, Millevere and The Walnut Group.

155.    Defendant Wilson Sonsini also represented LoveSac Utah and/or LoveSac Delaware and/or the Investor Defendants regarding the refinancing of the G&G Note.

156.    Pursuant to such representation, Wilson Sonsini and Langen had a pecuniary interest in the refinancing of the G&G Note as they were paid for their services. In addition, as a result of their representation related to the financing from the Investor Defendants, Wilson Sonsini and Langen were in a superior position to know material facts regarding LoveSac Utah's finances and structure.

157.    Documents prepared by Defendant Wilson Sonsini and Langen and forwarded by Wilson Sonsini to G&G, carelessly or negligently misrepresented that LoveSac Utah was an ongoing concern after February 2005. Wilson Sonsini and Langen made the misrepresentation without reasonable grounds for believing that the representation was true.

158.    The representation that LoveSac Utah was an ongoing concern after February 2005 was a false representation of a material fact.

159.    Defendant Wilson Sonsini and Langen knew that over 83% of the stock in LoveSac Delaware had been issued to Defendants Brand Equity, Walnut Investments, Walnut Private Equity and Millevere.

160.    In an e-mail dated November 15, 2005, Langen, an attorney employed by Wilson Sonsini and acting on behalf of Wilson Sonsini, innocently or negligently misrepresented to G&G, that "the stock certificates you are currently holding have not been cancelled and remain issued and outstanding." Langen made the misrepresentation without reasonable grounds for believing that the representation was true.

161.    In response to requests for financial information about the borrower of the Loan (LoveSac Utah), on November 9, 2005, Langen sent an e-mail to counsel for G&G and attached for G&G's review various documents including LoveSac Equity Structure, the LoveSac FY2005-06 Operating Plan, the LoveSac FY 2006-07 Operating Plan, the LoveSac Business Plan, and the

financial statements for Period 8 of the current fiscal year (the most recent published operating statement and balance sheet).

162.    None of the documents provided by Langen on November 9, 2005 indicated there had been a Merger or a transfer of assets from LoveSac Utah or a change of control of the Board of Directors.

163.    The documents provided to G&G in response to the request for financial documents of the borrower of the Loan (LoveSac Utah) were false and did not contain financial information and stock ownership related to LoveSac Utah.

164.    The content of the documents provided on November 9 by Langen and Wilson Sonsini were false representations of material facts. Langen provided the documents which contained the misrepresentation without reasonable grounds for believing that the representations contained in the documents were true.

165.    Defendants Wilson Sonsini and Langen owed a duty to G&G to provide accurate information because Wilson Sonsini knew or should have known that G&G would rely on the information provided by Wilson Sonsini.

166.    Defendants Wilson Sonsini and Langen breached that duty by providing false information to G&G regarding the status of LoveSac Utah and the stock certificates issued to G&G by LoveSac Utah. Defendants Wilson Sonsini and Langen made the misrepresentations with the intent that G&G would rely upon them to extend the Note and enter into the Loan Amendment and that G&G would be misled by the misrepresentations.

167.    In justifiable and reasonable reliance on the misrepresentations of Defendants Wilson Sonsini and Langen, G&G did not perfect its interest in the assets of LoveSac Delaware and is unable to recover the money loaned to LoveSac Utah.

168.    As a direct and proximate result of the misrepresentations G&G has suffered damages in the amount of at least $3,259,841.47, to be further determined at trial.

## COUNT IX-NEGLIGENT SUPERVISION
### (Wilson Sonsini)

169.    G&G incorporates by reference paragraphs 1 through 168 as if fully set forth herein.

170.    Langen is an attorney employed by Defendant Wilson Sonsini.

171.    In response to requests for financial information about the borrower of the Loan (LoveSac Utah), on November 9, 2005, Langen sent an e-mail to counsel for G&G and attached for G&G's review various documents including LoveSac Equity Structure, the LoveSac FY2005-06 Operating Plan, the LoveSac FY 2006-07 Operating Plan, the LoveSac Business Plan, and the financial statements for Period 8 of the current fiscal year (the most recent published operating statement and balance sheet).

172.    In an email dated November 15, 2005, Langen stated to G&G, in response to an inquiry, that "the stock certificates you are currently holding have not been cancelled and remain issued and outstanding."

173.    Defendant Wilson Sonsini had a duty to supervise its employees, including Langen.

174.    Defendant Wilson Sonsini owed a duty to G&G, whom it knew would rely upon its representations and those of its employees.

175.    Defendant Wilson Sonsini negligently supervised Langen by failing to review the content of her communications with G&G and by allowing her to communicate inaccurate information in the documents provided on November 9, 2005 and in the e-mail sent to G&G on November 15, 2005.

176.    As a creditor of LoveSac, and a pledge of stock, G&G was an intended beneficiary of the relationship between Wilson Sonsini and the Investor Defendants and/or LoveSac.

177.    Defendant Wilson Sonsini could reasonably have foreseen that G&G, a creditor and pledge of stock would be injured by the receipt of false information regarding the status of LoveSac and the validity of the pledged stock.

178.    As a direct and proximate cause of Wilson Sonsini's negligent supervision of Langen, G&G did not perfect its interest in the assets of LoveSac Utah and/or LoveSac Delaware and has been unable to recover the money loaned to LoveSac Utah.

179.    As a direct and proximate cause of Wilson Sonsini's negligent supervision of Langen, G&G has suffered damages in the amount of at least $ 3,259,841.47, to be further determined at trial.

## COUNT X - NEGLIGENCE
### (Wilson Sonsini, Langen)

180.    G&G incorporates by reference paragraphs 1 through 179 as if fully set forth herein.

181.    Defendants Wilson Sonsini and Langen owed a duty to G&G, whom it knew was relying on their professional advice and representations.

182.    G&G was an intended beneficiary of the relationship between Wilson Sonsini and the Investor Defendants and/or LoveSac.

183.    Wilson Sonsini and Langen breached their duty to G&G  by misrepresenting the status of G&G's shares following the Merger.

184.    Wilson Sonsini and Langen breached their duty to G&G by failing to correct the name of the borrower on the Loan Amendment after review of the Loan Amendment.

185.    Wilson Sonsini and Langen breached their duty to G&G by failing to inform G&G of the Merger or the transfer of assets from LoveSac Utah to LoveSac Delaware.

186.    Wilson Sonsini breached its duty to G&G by failing to correct any misrepresentations made by Langen.

187.    As a direct and proximate result of the negligence of Wilson Sonsini and Langen, G&G failed to protect its lien and failed to reperfect its security interest in LoveSac's inventory and assets.

188.    As a direct and proximate result of Wilson Sonsini's and Langen's negligence, G&G has been unable to recover the amount of its loan to LoveSac Utah and has suffered damages in the amount of at least $ 3,259,841.47, to be further determined at trial.

## COUNT XI – RESPONDEAT SUPERIOR/VICARIOUS LIABILITY
### (Wilson Sonsini)

189.    G&G incorporates by reference paragraphs 1 through 188 as if fully set forth herein.

190.    When Defendant Langen informed G&G that its shares in LoveSac Utah were valid and outstanding, she was acting within the scope of her employment with Defendant Wilson Sonsini.

191.    When Defendant Langen made negligent misrepresentations to G&G regarding the status of its shares, she was acting within the scope of her employment with Defendant Wilson Sonsini.

192.    When Defendant Langen reviewed the Loan Amendment and negligently failed to correct the name of the borrower from LoveSac Utah to LoveSac Delaware, she was acting within the scope of her employment with Defendant Wilson Sonsini.

193.     When Defendant Langen negligently communicated with representatives of G&G on matters related to the Note and Loan Amendment, she was acting within the scope of her employment with Defendant Wilson Sonsini.

194.     When Defendant Langen provided false documents to G&G, she was acting within the scope of her employment with Defendant Wilson Sonsini.

195.     When Defendant Langen negligently failed to inform G&G of the Merger or the transfer of assets from LoveSac Utah to LoveSac Delaware, she was acting within the scope of her employment with Defendant Wilson Sonsini.

196.     Pursuant to Cal. Civ. Code § 2338, Wilson Sonsini is strictly liable for the torts of its employees.

197.     As a direct and proximate result of the negligent misrepresentations made by Langen, G&G has been unable to recover the amount of its loan to LoveSac Utah and has suffered damages in the amount of at least $ 3,259,841.47, to be further determined at trial.

## COUNT XII– NEGLIGENCE
### (Hyde, White, Judd, Cox, Weiland, Yarnell, Gould, Wright, Spokowski)

198.     G&G incorporates by reference paragraphs 1 through 197 as if fully set forth herein.

199.     Defendants Hyde, White, Judd, Cox, Weiland, Yarnell, Gould, Wright, Spokowski owed a duty to G&G, a creditor of LoveSac Utah and LoveSac Delaware, as officers and/or directors of an insolvent corporation.

200.     Defendants Hyde, White, Judd, Cox, Weiland, Yarnell, Gould, Wright, Spokowski also owed a duty to G&G because G&G had an assignment of stock.

201.    Defendants Hyde, White, Judd, Cox, Weiland, Yarnell, Gould, Wright, Spokowski breached their duty to G&G when they negligently failed to disclose the Merger to G&G before, during or after it took place until LoveSac Delaware filed its bankruptcy case.

202.    The negligent failure of Defendants Hyde, White, Judd, Cox, Weiland, Yarnell, Gould, Wright, and Spokowski to disclose the Merger to G&G was the actual and proximate cause of G&G's inability to collect the amounts loaned to LoveSac Utah under the Note and Loan Amendment.

203.    As the direct and proximate cause of Defendants Hyde, White, Judd, Cox, Weiland, Yarnell, Gould, Wright, and Spokowski's negligent failure to disclose the Merger, G&G suffered damages in the amount of at least $ 3,259,841.47, to be further determined at trial.

WHEREFORE, the Plaintiff G&G, LLC respectfully prays for the following relief:

a.    As to Count I (Fraud) - Plaintiff requests compensatory damages in the amount of at least $ 3,259,841.47 to be further determined at trial, punitive damages in an amount to be determined at trial, pre-judgment interest, post-judgment interest, attorneys fees and costs against Defendants Hyde, White, Judd, Cox, Weiland, Spokowsi, Yarnell, Gould, and Wright, jointly and severally.

b.    As to Count II (Constructive Fraud) - Plaintiff requests compensatory damages in the amount of at least $ 3,259,841.47 to be further determined at trial, punitive damages in an amount to be determined at trial, pre-judgment interest, post-judgment interest, attorneys fees and costs against Defendants Hyde, White, Judd, Cox, Weiland, Spokowsi, Yarnell, Gould, and Wright, jointly and severally.

c.    As to Count III (Fraudulent Concealment) – Plaintiff requests compensatory damages in the amount of at least $3,259,841.47, to be further determined at trial, punitive

damages in an amount to be determined at trial, pre-judgment interest, post-judgment interest, attorneys fees and costs against Defendants Hyde, White, Judd, Cox, Weiland, Brand Equity, Walnut Investment, Walnut Private Equity, Walnut Group, Millevere, Yarnell, Gould, Spokowski, Wilson Sonsini, and Wright, jointly and severally.

        d.      As to Count IV (Conversion) - Plaintiff requests compensatory damages in the amount of least $ 3,259,841.47 to be further determined at trial, punitive damages in an amount to be determined at trial, pre-judgment interest, post-judgment interest, attorneys fees and costs against Defendants Hyde, White, Judd, Cox, Weiland, Brand Equity, Walnut Investment, Walnut Private Equity, Walnut Group, Millevere, Yarnell, Gould and Wright and Spokowski, jointly and severally.

        e.      As to Count V (Civil Conspiracy) - Plaintiff requests compensatory damages in the amount of at least $ 3,259,841.47 to be further determined at trial, punitive damages in an amount to be determined at trial, pre-judgment interest, post-judgment interest, attorneys fees and costs against Defendants Hyde, White, Judd, Cox, Weiland, Brand Equity, Walnut Investment, Walnut Private Equity, Walnut Group, Millevere, Yarnell, Gould, Wright and Spokowski, jointly and severally.

        f.      As to Count VI (Virginia Statutory Business Conspiracy) – Plaintiff requests compensatory damages in the amount of at least $ 3,259,841.47 to be further determined at trial, treble damages in an amount of at least $ 9,779,524.41 to be further determined at trial, pre-judgment interest, post-judgment interest, attorneys fees and costs against Defendants Hyde, White, Judd, Cox, Weiland, Brand Equity, Walnut Investment, Walnut Private Equity, Walnut Group, Millevere, Yarnell, Gould, Wright and Spokowski, jointly and severally.

g.     As to Count VII – (Negligent Misrepresentation) - Plaintiff requests compensatory damages in the amount of at least $ 3,259,841.47 to be further determined at trial, pre-judgment interest, post-judgment interest, attorneys fees and costs against Defendants Wilson Sonsini and Langen, jointly and severally.

h.     As to Count VIII – (Constructive Fraud) - Plaintiff requests compensatory damages in the amount of at least $ 3,259,841.47 to be further determined at trial, punitive damages to be further determined at trial, pre-judgment interest, post-judgment interest, attorneys fees and costs against Defendants Wilson Sonsini and Langen, jointly and severally.

i.     As to Count IX (Negligent Supervision) – Plaintiff requests compensatory damages in the amount of at least $ 3,259,841.47 to be further determined at trial, pre-judgment interest, post-judgment interest, attorneys fees and costs against Defendant Wilson Sonsini.

j.     As to Count X (Negligence) - Plaintiff requests compensatory damages in the amount of least $ 3,259,841.47 to be further determined at trial, pre-judgment interest, post-judgment interest, attorneys fees and costs against Defendants Wilson Sonsini and Langen.

k.     As to Count XI (Respondeat Superior/Vicarious Liability) - Plaintiff requests compensatory damages in the amount of at least $ 3,259,841.47 to be further determined at trial, pre-judgment interest, post-judgment interest, attorneys fees and costs against Defendant Wilson Sonsini.

l.     As to Count XII (Negligence) - Plaintiff requests compensatory damages in the amount of least $ 3,259,841.47 to be further determined at trial, pre-judgment interest, post-judgment interest, attorneys fees and costs against Defendants Hyde, White, Judd, Cox, Weiland, Yarnell, Spokowski, Gould, Wright, jointly and severally.

Dated:  July 13, 2007
Wilmington, Delaware

ZUCKERMAN SPAEDER LLP


_Virginia Whitehill Guldi_

Thomas G. Macauley (ID No. 3411)
Virginia Whitehill Guldi (ID No 2792)
Elizabeth D. Power (ID No. 4135)
919 Market Street, Suite 990
P.O. Box 1028
Wilmington, DE 19899
(302) 427-0400

- and –

STINSON MORRISON HECKER LLP
Marc E. Albert
Janet M. Nesse
Lawrence P. Block
Katherine M. Sutcliffe Becker
1150 18th Street NW, Ste. 800
Washington, DC  20036-3816
(202) 785-9100

Attorneys for G&G, LLC

# EXHIBIT A

**The below described is SIGNED.**

(th)

**Dated: August 08, 2006**   _Glen E Clark_
                              **GLEN E. CLARK**
                              **U.S. Bankruptcy Judge**



*Order Prepared and Submitted by:*

Troy J. Aramburu (10444)
**SNELL & WILMER L.L.P.**
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
Email: taramburu@swlaw.com

Attorneys for G&G, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**VERDI R. WHITE, III**, an individual,<br><br>Debtor. | Bankruptcy No. **06-21955 (GEC)**<br><br>Chapter 7<br><br>Honorable Glen E. Clark |

### ORDER GRANTING G&G, LLC'S MOTION
### FOR RELIEF FROM THE AUTOMATIC STAY

This matter came before the Court upon consideration of the *Motion for Relief from the Automatic Stay to Liquidate Claim, But Only to Collect on Same to the Extent of Insurance Proceeds* (the "**Motion**") filed by G&G, LLC ("**G&G**"), through counsel, on July 14, 2006. Notice of the Motion and of the hearing thereon (the "**Hearing**") was given properly to applicable parties in interest in accordance with the applicable rules of procedure. No objection

407382

**Filed: 08/04/06**

or other response to the Motion has been filed.  Upon consideration of the Motion and other pleadings of record, it is hereby

**ORDERED** that:

1.    The Motion is granted.[1]

2.    The hearing originally scheduled for August 9, 2006, at 11:30 a.m. is stricken.

3.    G&G is authorized to pursue to judgment its claims against the above-captioned debtor (the "**Debtor**"), as such claims are more particularly described in the Complaint, in order to liquidate any such claims.  However, G&G may only collect those obligations owed by the Debtor in (i) the above-captioned bankruptcy case, (ii) from proceeds of insurance covering the Debtor's obligations, to the extent such proceeds are available, or (iii) from other assets of the Debtor that are not property of the estate to the extent that the discharge of the Debtor is denied, or if the debt to G&G is determined to be non-dischargable, subject to the applicable provisions of 11 U.S.C. § 362.

--------------------------------------- END OF DOCUMENT ---------------------------------------

---

[1]    Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

407382                                          2

%JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
G&G, LLC

## DEFENDANTS
James L. Hyde, et al.

(b) County of Residence of First Listed Plaintiff  **Fairfax, VA**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)  **Virginia Whitehill Guldi, Esq.  Zuckerman Spaeder LLP, 919 N. Market St., Ste. 990 Wilmington, DE  19801  (302) 427-0400**

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☒ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC Section 1332(a)(2)
Brief description of cause: **Fraudulent transfer of assets to defeat plaintiff's security interest**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 3,259,841

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):    JUDGE                    DOCKET NUMBER

DATE  **July 13, 2007**

SIGNATURE OF ATTORNEY OF RECORD  _Virginia Whitehill Guldi_    Virginia Whitehill Guldi

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. $0\ 7 - 4\ 4\ 0$ _____

## ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

### *NOTICE OF AVAILABILITY OF A*
### *UNITED STATES MAGISTRATE JUDGE*
### *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___3___ COPIES OF AO FORM 85.

_7/13/07_____
(Date forms issued)

_Nicholas Matos_____
(Signature of Party or their Representative)

_Nicholas Matos_____
(Printed name of Party or their Representative)

**Note: Completed receipt will be filed in the Civil Action**