IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| G&G, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-440 (SLR) |
| | ) | |
| SHAWN D. NELSON, et al., | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANTS WILSON, SONSINI, GOODRICH & ROSATI, P.C. AND LILY WONG LANGEN OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE PLAINTIFF G&G, LLC'S COMPLAINT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (No. 1098)
Derek C. Abbott (No. 3376)
Ian R. McConnel (No. 4888)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
*Attorneys for Defendants*
*Wilson, Sonsini, Goodrich & Rosati P.C. & Lily*
*Wong Langen*

September 24, 2007

1219108.9

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS ................................................................................. ii

NATURE AND STAGE OF PROCEEDING ...................................................1

SUMMARY OF ARGUMENT ........................................................................2

STATEMENT OF FACTS ..............................................................................4

ARGUMENT ..................................................................................................7

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER
        THE LAWYER DEFENDANTS. ............................................................7

        A.      There is No Specific or General Jurisdiction Over the
                Lawyer Defendants under Section 3104(c) of the Delaware
                Code. ...........................................................................................8

        B.      Plaintiff Fails to Allege Sufficient Minimum Contacts as
                Required Under the Due Process Clause. ...................................10

II.     ALTERNATIVELY, PLAINTIFF'S CLAIMS FOR RELIEF
        SHOULD BE DISMISSED UNDER 12(b)(6) FOR FAILURE TO
        STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.................12

        A.      Utah Law Applies to Each of Plaintiff's Claims Against the
                Lawyer Defendants. ....................................................................13

        B.      Plaintiff Fails to State a Claim for Fraudulent Concealment
                Against the Lawyer Defendants. ..................................................16

        C.      Plaintiff Fails To State a Claim for Negligent
                Misrepresentation Against the Lawyer Defendants. ....................20

        D.      Plaintiff Fails to State a Claim for Constructive Fraud
                Against the Lawyer Defendants. ..................................................22

        E.      Plaintiff Fails to State a Claim for Negligent Supervision
                Against Wilson Sonsini..................................................................23

        F.      Plaintiff Fails to State a Claim for Negligence Against the
                Lawyer Defendants. ....................................................................24

        G.      Plaintiff Fails to State a Claim for Respondeat Superior
                Against Wilson Sonsini..................................................................27

CONCLUSION.................................................................................................29

## TABLE OF CITATIONS

__Cases__                                                              __Page(s)__

*Atkinson v. IHC Hosps., Inc.*,
        798 P.2d 733 (Utah 1990)                                      25, 26

*Ayyildiz v. Kidd*,
        220 Va. 1080 (Va. 1980)                                         25

*Bank of Montreal v. Signet Bank*,
        193 F.3d 818 (4th Cir. 1999)                                   17, 18

*Bd. of Dirs. of the Lesner Pointe Condo. on the Chesapeake Bay Ass'n, Inc.*
        *v. Harbour Point Bldg. Corp.*,
        2002 WL 32072394 (Va. Cir. June 18, 2002)                       21

*Bell Atlantic Corp. v. William Twombly*,
        127 S.Ct. 1955 (2007)                                           13

*Birkner v. Salt Lake County*,
        771 P.2d 1053 (Utah 1989)                                       27

*Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*,
        271 Va. 206 (Va. 2006)                                          24

*Broaddus v. Standard Drug Co., Inc.*,
        179 S.E.2d 497 (Va. 1971)                                       27

*Brown v. SAP Am., Inc.*,
        1999 U.S. Dist. LEXIS 15525 (D. Del. Sept. 13, 1999)           13, 17

*Burger King Corp. v. Rudzewicz*,
        471 U.S. 462 (1985)                                            passim

*Chesapeake and Potomac Tel. Co. v. Dowdy*,
        235 Va. 55 (Va. 1988)                                          23, 24

*Clover v. Snowbird Ski Resort*,
        808 P.2d 1037 (Utah 1991)                                       27

*Davis v. Grusemeyer*,
        996 F.2d 617 (3d Cir. 1993)                                     18

*d'Elia v. Rice Dev., Inc.*,
        147 P.3d 515 (Utah App. 2006)                                   22

*DuBrueler v. Hartford Fire Insurance Co.*,
    1983 WL 210333 (Va. Cir. Sept. 9, 1983)      26

*Evaluation Research Corp. v. Alequin*,
    439 S.E.2d 387 (Va. 1994)      17

*Foster Wheeler Energy Corp. v. Metallgesellschaft AG*,
    1993 WL 669447 (D. Del. Jan. 4, 1993)      9

*Glassman v. Computervision Corp.*,
    90 F.3d 617 (1st Cir. 1996)      13

*Hansen v. Stanley Martin Companies, Inc.*,
    585 S.E.2d 567 (Va. 2003)      21

*Hitachi Credit Am. Corp. v. Signet Bank*,
    166 F.3d 614 (4th Cir. 1999)      17

*Hughes v. Housely*,
    599 P.2d 1250 (Utah 1979)      20, 25

*In re Balko*,
    348 B.R. 684 (Bankr. W.D. Pa. 2006)      19

*In re Burlington Coat Factory Sec. Lit.*,
    114 F.3d 1410 (3d Cir. 1997)      12

*In re Nazi Era Cases Against German Defendants Litig.*,
    2005 WL 2673498 (3d Cir. 2005)      11

*In re Nice Sys., Ltd. Sec. Litig.*,
    135 F.Supp.2d. 551 (D.N.J. 2001)      19

*In re Rockefeller Ctr. Props., Inc.*,
    311 F.3d 198 (3d Cir. 2002)      19

*Int'l Shoe Co. v. State of Washington, etc.*,
    326 U.S. 310 (1945)      8, 10

*Jackson v. Righter*,
    891 P.2d 1387 (Utah 1995)      23

*Jensen v. IHC Hosps., Inc.*,
    82 P.3d 1076 (Utah 2003)      16, 22

*Kensington Assocs. v. West*,
    362 S.E.2d 900 (Va. 1987)      27

*Kloth v. S. Christian Univ.*,
    494 F.Supp.2d 273 (D. Del. 2007)             8, 9

*Lucas v. Gulf & W. Indus., Inc.*,
    666 F.2d 800 (3d Cir. 1981)             7

*Lynchburg Commc'n Sys. v. Ohio State Cellular Phone Co.*,
    2003 WL 1247053 (Va. Cir. Jan. 22, 2003)             17, 25, 26

*Mann v. Wadsworth*,
    776 P.2d 926 (Utah App. 1989)             27

*MDNET, Inc. v. Pharmacia Corp.*,
    147 Fed.Appx. 239 (3d Cir. 2005)             19

*Metro Commc'n. Corp. BVI v. Advanced Mobilecomm Tech., Inc.*,
    854 A.2d 121 (Del. Ch. 2004)             19

*Metrocall of Del., Inc. v. Cont'l Cellular Corp.*,
    437 S.E.2d 189 (Va. 1993)             16, 17, 18

*Mich. Mut. Ins. Co. v. Smoot*,
    128 F.Supp.2d 917 (E.D. Va. 2000)             25

*Millman v. Snyder*,
    65 Va. Cir. 62 (Va. Cir. Ct. 2004)             24

*Mobilificio San Giacomo S.P.A. v. Stoffi*,
    1996 WL 924508, at *3 (D. Del. 1996)             11

*Monsanto Co. v. Syngenta Seeds, Inc.*,
    443 F.Supp.2d 636 (D. Del. 2006)             8, 9

*Mortarino v. Consultant Eng'g Serv.*,
    467 S.E.2d 778 (Va. 1996)             21

*Muse v. Schleiden*,
    349 F.Supp.2d 990 (E.D. Va. 2004)             24

*Norris v. Mitchell*,
    495 S.E.2d 809 (Va. 1998)             17

*Oxendine v. Overturf*,
    973 P.2d 417 (Utah 1999)             25

*Price-Orem Inv. Co. v. Rollins, Brown & Gunnell*,
    713.2d 55 (Utah 1986)             20

v.

*Prof'l Realty Corp. v. Bender,*
    222 S.E.2d 810 (Va. 1976)      26

*Rawson v. Conover,*
    20 P.3d 876 (Utah 2001)      20

*Reach & Assocs. v. Dencer,*
    269 F.Supp.2d 497, 502 (D. Del. 2003)      7, 9

*Rowland v. State Farm Fire & Cas. Co.,*
    2003 WL 22779071 (Va. Cir. Oct. 14, 2003)      27

*Smith v. Frandsen,*
    94 P.3d 919 (Utah 2004)      16

*Stanziale v. Nachtomi (In re Tower Air, Inc.),*
    416 F.3d 229 (3d Cir. 2005)      13

*Thompson v. Town of Front Royal,*
    117 F.Supp.2d 522 (W.D. Va. 2000)      24

*Von Hake v. Thomas,*
    705 P.2d 766 (Utah 1985)      22

*Walker v. West Michigan Nat. Bank & Trust,*
    324 F.Supp.2d 529 (D. Del. 2004)      9

*Wellness Publishing v. Barefoot,*
    2005 WL 852685 3d Cir. 2005)      10

*Williams v. Melby,*
    699 P.2d 723 (Utah 1985)      24

*Winters v. Schulman,*
    977 P.2d 1218 (Utah Ct. App. 1999)      25

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980)      10, 11

<u>Other Authorities</u>

10 Del.C. § 3104      8

FED. R. CIV. P. 9      18

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148 (1971)      14

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 98 (2000)      18

## NATURE AND STAGE OF PROCEEDING

This case stems from Plaintiff G&G LLC's ("G&G" or "Plaintiff") own failure to properly re-perfect security interests in assets of The LoveSac Corporation ("LoveSac") following a February 2005 merger of The LoveSac Corporation, a Utah corporation ("LoveSac Utah"), with and into LoveSac, a Delaware corporation. According to Plaintiff, when LoveSac declared bankruptcy in 2006, Plaintiff's loan to LoveSac was deemed unsecured, resulting in a claimed loss to Plaintiff of more than $3.2 million. Plaintiff previously settled its $3.2 million claim against LoveSac for a mere $140,000. Plaintiff's Amended Complaint now seeks to hold certain officers and directors of LoveSac and certain professionals who represented LoveSac, including Defendant Wilson, Sonsini, Goodrich & Rosati, P.C. (the "Defendant" or "Wilson Sonsini"), prepetition former counsel to LoveSac, and Defendant Lily Wong Langen ("Ms. Langen" and together with Wilson Sonsini, the "Lawyer Defendants"), an associate attorney formerly employed by Wilson Sonsini, liable for the same damages.

The gravamen of Plaintiff's claims against the Lawyer Defendants is that they caused Plaintiff's failure to re-perfect its security interests by not disclosing in the November 2005 negotiations of a loan LoveSac's merger which was publicly filed nine months earlier. As a result, Plaintiff alleges it enjoyed priority only as a general unsecured creditor of LoveSac in LoveSac's subsequent chapter 11 proceeding. Specifically, Plaintiff alleges in its Complaint[1] six state law causes of action against Wilson Sonsini and four of these causes of action against Ms. Langen.[2] Plaintiff nowhere alleges, nor could it, any lawyer-client relationship or other fiduciary

---

[1]     This reference is to D.I. 19, the Amended Complaint.

[2]     In addition to the claims asserted against Wilson Sonsini and Ms. Langen, the Complaint also asserts a variety of state law claims against certain former directors and officers of and investors in LoveSac or its predecessor.

relationship existed between Plaintiff and the Lawyer Defendants (who represented LoveSac), but nonetheless alleges that the Lawyer Defendants (1) fraudulently concealed material information from Plaintiff, (2) negligently misrepresented other information to Plaintiff, (3) constructively defrauded Plaintiff and (4) otherwise negligently dealt with Plaintiff. Plaintiff also alleges that Wilson Sonsini negligently supervised Ms. Langen and is liable under respondeat superior for Ms. Langen's actions.

As set forth more fully below, the Court is without personal jurisdiction to adjudicate this matter against the Lawyer Defendants and the Complaint should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. In addition, even were Plaintiff's allegations consistent with the facts and the law (which they are not), Plaintiff's wholly conclusory allegations fail to state any claim against the Lawyer Defendants under applicable law. On these grounds, the Lawyer Defendants have moved to dismiss all claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This is the opening brief in support of the Lawyer Defendants' motion to dismiss.

<u>SUMMARY OF ARGUMENT</u>

1.      The Court must dismiss the entirety of the Complaint against the Lawyer Defendants for lack of personal jurisdiction because:

a)  Plaintiff does not allege any facts that establish specific or general jurisdiction under Delaware's Long Arm Statute.

b)  Plaintiff does not allege any facts that establish sufficient minimum contacts between the Lawyer Defendants and Delaware as required under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

      c)  Plaintiff does not allege any facts that establish that the exercise of jurisdiction over the Lawyer Defendants comports with traditional notions of fair play and substantial justice required under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

      2.     Plaintiff fails to state a claim for fraudulent concealment because it has not alleged any facts (a) to demonstrate that the Lawyer Defendants owed Plaintiff any duty of disclosure or (b) to support Plaintiff's contention that it had a right to reasonably rely upon the alleged nondisclosure of the Merger.  Alternatively, Plaintiff fails to plead fraudulent concealment with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure.

      3.     Plaintiff fails to state a claim for negligent misrepresentation because it has not alleged any facts (a) that would establish the falsity of the alleged representations, (b) that establish that the Lawyer Defendants failed to exercise reasonable care or competence with regard to the truthfulness of the alleged statements attributed to them and (c)  that support its conclusory statement that Plaintiff justifiably relied on the alleged representations.

      4.     Plaintiff fails to state a claim for constructive fraud because it has not alleged (a) that a confidential relationship existed between the Lawyer Defendants and Plaintiff, (b) any facts that would establish such a relationship or (c) any facts requiring the disclosure of the merger by the Lawyer Defendants.

      5.     Plaintiff fails to state a claim for negligent supervision because it fails to allege facts supporting forseeability of harm, and thus fails to adequately allege either a duty owed to Plaintiff or the breach of any duty.

      6.     Plaintiff fails to state a claim for negligence because it has not alleged any facts that would establish any legally cognizable duty that the Lawyer Defendants owed to

Plaintiff, the counterparty to the Lawyer Defendants' client in an arm's length, commercial transaction.

       7.     Plaintiff fails to state a claim for respondeat superior because it has failed to allege an underlying tort committed by Ms. Langen on which to base the extension of vicarious liability to Wilson Sonsini.

STATEMENT OF FACTS

On or about October 30, 2003, LoveSac Utah entered into a revolving secured financing arrangement (the "<u>Loan</u>") with Plaintiff pursuant to a loan agreement and related documents (collectively, the "<u>Loan Agreement</u>"), under which it ultimately borrowed approximately $2.8 million in principal. (Compl. ¶ 29.) After the execution of the Loan Agreement, Plaintiff apparently perfected its security interests in its collateral for the Loan by making filings in Utah, LoveSac Utah's state of incorporation. (Compl. ¶ 31.) Plaintiff also obtained a pledge of certain stock of LoveSac Utah and perfected that pledge by taking possession of the pledged shares. (Compl. ¶¶ 33, 34.) The Loan originally matured on November 1, 2005, but maturity was extended to November 1, 2006 by the First Omnibus Amendment to Loan Documents (the "<u>Loan Amendment</u>") effective November 15, 2005. (Compl. ¶¶ 59, 78.)

On or about February 25, 2005, LoveSac Utah merged with and into LoveSac (the "<u>Merger</u>"). (Compl. ¶ 50.) Wilson Sonsini represented LoveSac and prepared the merger documentation. The terms of the Merger were detailed in an Agreement and Plan of Merger of the LoveSac Corporation, a Delaware Corporation, and the LoveSac Corporation, a Utah Corporation (the "<u>Merger Agreement</u>") and were further reflected in the Certificate of Ownership and Merger of The LoveSac Corporation (a Utah Corporation) into The LoveSac Corporation (a

Delaware Corporation) (the "Merger Certificate") filed publicly with the State Office of the Secretary of State of Delaware (the "Secretary of State") on February 25, 2005. (*See* Compl. ¶ 50.) Under the Merger Agreement, outstanding shares of LoveSac Utah were converted into shares of LoveSac. LoveSac was the surviving entity and LoveSac Utah's separate corporate existence was extinguished. (Compl. ¶¶ 39, 50.) In accordance with the Merger Agreement, after the Merger and until their surrender, outstanding certificates for LoveSac Utah stock remained outstanding and represented ownership of the same number of shares of LoveSac.

As a result of the Merger, the state of incorporation of the account debtor under the Loan changed from Utah to Delaware and LoveSac acceded to the rights and obligations of LoveSac Utah under the Loan Agreement. (Compl. ¶¶ 39, 50.) Notwithstanding this change, Plaintiff failed to re-perfect its security interest in the collateral securing the Loan in Delaware by filing a simple UCC perfection statement with the Secretary of State. (Compl. ¶¶ 47, 50.) Plaintiff claims that LoveSac had a contractual obligation under the Loan Agreement to notify Plaintiff of this change in domicile. (Compl. ¶ 50.)

After the Merger, LoveSac continued to raise capital to conduct and attempt to grow its business. Wilson Sonsini, in part through Ms. Langen, represented LoveSac in certain of those efforts. (Compl. ¶¶ 57, 58.) Part of that financing included certain secured debt obtained from, among others, Defendants Walnut Investment Partners, L.P., Walnut Private Equity Fund, L.P., and Brand Equity Ventures II, L.P. (Compl. ¶¶ 57, 58.) These Defendants perfected their security interest in the collateral securing such debt by making appropriate filings with the Secretary of State as early as September 12, 2005. (Compl. ¶ 57.)

In November 2005, during the discussions leading to the execution of the Loan Amendment by LoveSac and Plaintiff, counsel for Plaintiff requested from Ms. Langen, among

other things, assurances that the pledged stock certificates had not been cancelled and remained issued and outstanding. (Compl. ¶ 81.) After due inquiry to LoveSac, Ms. Langen correctly confirmed, consistent with the Merger Agreement, that "[t]he stock certificates you are currently holding have not been cancelled and remain issued and outstanding." (Compl. ¶ 81.) Ms. Langen also forwarded to counsel for Plaintiff financial documents she had received from LoveSac, then the borrower under the Loan Agreement. (Compl. ¶ 74.) In addition, during the documentation of the Loan Amendment, LoveSac's board authorized the Loan Amendment by unanimous written consent, which was provided to Plaintiff or its counsel. (Adv. Pro. No. 06-50786, D.I. 1, ¶ 41.) This consent reflected on its face that LoveSac was a Delaware corporation and that the consents were prepared "in accordance with Section 141(f) of the Delaware General Corporation Law." *Id.* Plaintiff has not alleged that the Lawyer Defendants ever affirmatively represented that LoveSac was a Utah corporation, nor that it ever specifically inquired of LoveSac or the Lawyer Defendants whether LoveSac was still incorporated in Utah.

LoveSac was not able to maintain sufficient liquidity to continue to operate its business and, on January 30, 2006, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (Compl. ¶ 83.) After litigation regarding (i) various contested matters including the validity, extent and priority of Plaintiff's security interests in LoveSac's assets and (ii) LoveSac's chapter 11 plan, Plaintiff settled its various claims with LoveSac by, among other things, waiving its claims against LoveSac and its estate in exchange for a distribution of $140,000 on or about the effective date of the chapter 11 plan (the "Plan"). (Case No. 06-10080, D.I. 649.) The Plan was confirmed on July 27, 2006. (Case No. 06-10080, D.I. 658) and became effective on August 10, 2006. (Case No. 06-10080, D.I. 687.)

Plaintiff initially brought suit on July 25, 2006 against LoveSac and the Lawyer Defendants, among others, in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") alleging substantially the same counts at issue in this action. (Adv. Pro. No. 06-50786, D.I. 1, 32.) The Delaware Bankruptcy Court dismissed that action for lack of subject matter jurisdiction on May 17, 2007. (Adv. Pro. No. 06-50786, D.I. 109.) On July 13, 2007, Plaintiff filed this action. (D.I. 1.)

ARGUMENT

I.    THIS COURT LACKS PERSONAL JURISDICTION OVER THE LAWYER DEFENDANTS.

Although Plaintiff is entitled to have all reasonable inferences drawn in its favor when the Court rules on a motion to dismiss under Rule 12(b)(2), Plaintiff nonetheless bears the burden of alleging facts sufficient to establish that personal jurisdiction exists over the parties. *Reach & Assocs. v. Dencer*, 269 F.Supp.2d 497, 502 (D. Del. 2003); *see Lucas v. Gulf & W. Indus., Inc.*, 666 F.2d 800, 805 (3d Cir. 1981) ("The burden of establishing the requisite jurisdictional facts rests on the plaintiff as the party alleging their existence"). In this case, Plaintiff blithely asserts with no supporting facts that this Court has personal jurisdiction over the Lawyer Defendants. Plaintiff's assertion fails as a matter of law.

In order to establish this Court's personal jurisdiction, Plaintiff must satisfy a two prong test. First, Plaintiff must establish that there is either specific or general jurisdiction under section 3104(c) of the Delaware Code. *Reach & Assocs.*, 269 F.Supp.2d at 502. Second, Plaintiff is required to establish that the exercise of personal jurisdiction by the Court would comport with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *See, e.g., Int'l Shoe Co. v. State of Washington, etc.*, 326 U.S. 310, 319 (1945).

A.    There is No Specific or General Jurisdiction Over the Lawyer Defendants under Section 3104(c) of the Delaware Code.

Section 3104(c) of the Delaware Code delineates the scope of jurisdictional authority of the Delaware courts over nonresidents.[3] Pursuant to subsections 3104(c)(1)-(3) and 3104(c)(5)-(6) of the Delaware Code, specific jurisdiction may be established over a nonresident if the cause of action arises from contacts within the forum state. *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F.Supp.2d 636, 643 (D. Del. 2006); *Kloth v. S. Christian Univ.*, 494 F.Supp.2d 273, 278 (D. Del. 2007); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  In order for an act to be relevant in a personal jurisdiction analysis under these subsections, the nonresident's acts must occur in Delaware or be directed toward Delaware residents.  *See Reach & Assocs.*, 269 F.Supp.2d at 504; *Burger King Corp.*, 471 U.S. at 472.  In contrast, subsection 3104(c)(4) of the Delaware Code provides for general jurisdiction, which does not require the defendant's

---

[3]     Section 3104(c) of the Delaware Code states, in relevant part:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del.C. § 3104.

connections be related to the particular cause of action at issue, in circumstances showing that the defendant has continuous or systematic contacts with the forum state. *Monsanto Co.*, 443 F.Supp.2d at 643; *Kloth*, 494 F.Supp.2d at 278. "[T]he standard for general jurisdiction is high in practice and not often met, requiring that the plaintiff show significantly more than mere minimum contacts." *Reach & Assocs.*, 269 F.Supp.2d at 505 (citing to *Sears, Roebuck & Co. v. Sears plc*, 744 F.Supp. 1297, 1300, 1304 (D. Del. 1990)); *Foster Wheeler Energy Corp. v. Metallgesellschaft AG*, Civ. A. No. 91-214-SLR, 1993 WL 669447, at *3 (D. Del. Jan. 4, 1993).

Here, Plaintiff fails to allege any facts in the Complaint which support the assertion of specific or general jurisdiction over the Lawyer Defendants. Plaintiff cannot establish specific jurisdiction under section 3104(c) because Plaintiff has not alleged that its claims arise from or directly relate to any act by the Lawyer Defendants in Delaware -- in fact, Plaintiff alleges no specific fact that establishes that the Lawyer Defendants performed any act in Delaware at all. *Monsanto Co.*, 443 F.Supp.2d at 643; *Kloth*, 494 F.Supp.2d. at 278; *see Burger King Corp.*, 471 U.S. at 472. Plaintiff alleges only that the Lawyer Defendants "transact business" in Delaware, without alleging that any of the alleged causes of action arise from any act or conduct by the Lawyer Defendants in Delaware. Merely mouthing the bare legal conclusion that personal jurisdiction exists is insufficient. *See. e.g., Walker v. West Michigan Nat. Bank & Trust*, 324 F.Supp.2d 529, 532 (D. Del. 2004) ("plaintiff can not rely upon the pleadings alone but must come forward with some evidentiary facts to support the conclusion that the court has jurisdiction over each of the defendants"); *Wellness Publishing v. Barefoot*, No. 03-3919, 2005 WL 852685, at *1 (3d Cir. 2005) ("A plaintiff bears the burden of demonstrating that the defendants' contacts with the forum state are sufficient to give the court in personam jurisdiction"). Moreover, Plaintiff provides no facts to support an assertion of general

jurisdiction over the Lawyer Defendants. Except for the vague and conclusory statement that the Lawyer Defendants "transact business" in Delaware, the Complaint is devoid of any fact that would establish that the Lawyer Defendants have any contact, let alone "continuous or systematic" contacts, with Delaware sufficient to satisfy the high bar required for general jurisdiction.

B.    Plaintiff Fails to Allege Sufficient Minimum Contacts as Required Under the Due Process Clause.

Even assuming for argument's sake that Plaintiff has met the first prong of the jurisdictional test (which it has not), Plaintiff nevertheless fails to establish that the exercise of jurisdiction by this Court would comport with the Lawyer Defendants' right to due process under the United States Constitution. *See, e.g., Burger King Corp.*, 471 U.S. at 472; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *Int'l Shoe Co.*, 326 U.S. at 319. "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp.*, 444 U.S. at 291. A Court may exercise personal jurisdiction over a nonresident only so long as the plaintiff has established that "minimum contacts" exist between the nonresident and the forum state. *Id.* Minimum contacts may be established when "the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Burger King Corp*, 471 U.S. at 475. "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* Here, Plaintiff makes no allegations in the Complaint that meet the minimum contacts test. In light of Plaintiff's bare and conclusory assertion that the Lawyer Defendants "transact business" in Delaware,

Plaintiff has failed to allege any facts that would establish sufficient "minimum contacts" between the Lawyer Defendants and Delaware.

Nevertheless, even if the Court were to determine that the Lawyer Defendants have sufficient "minimum contacts," litigating this dispute in Delaware would not comport with "traditional notions of fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 472. Once a court determines that a nonresident has sufficient "minimum contacts" within a forum state, these contacts must be considered by the Court in light of several factors to determine whether the assertion of personal jurisdiction is fair and reasonable. *See Burger King Corp*, 471 U.S. at 472; *World-Wide Volkswagen Corp.*, 444 U.S. at 291. These factors include:

> 1) the burden on the defendant in litigating in the particular forum;
>
> 2) the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum;
>
> 3) the interstate judicial system's interest in obtaining the most efficient resolution of controversies;
>
> 4) the shared interests of the several States in furthering fundamental substantive social policies.

*Burger King Corp.*, 471 U.S. at 477; *World-Wide Volkswagen Corp.*, 444 U.S. at 292; *In re Nazi Era Cases Against German Defendants Litig.*, No. 04-2848, 2005 WL 2673498, at *4 (3d Cir. 2005); *Mobilificio San Giacomo S.P.A. v. Stoffi*, No. 96-415-LON, 1996 WL 924508, at *3 (D. Del. 1996).

Protracted litigation in Delaware will create significant financial burden and inconvenience for both Ms. Langen, who is a resident of Utah, and Wilson Sonsini, which is incorporated and headquartered in California. In contrast, Plaintiff, incorporated and headquartered in Virginia, could just as easily and efficiently litigate this action in another

forum. Moreover, the state of Delaware does not have a significant interest in adjudicating this case. Neither the Plaintiff nor any of the Lawyer Defendants is a citizen of Delaware. The claims alleged by Plaintiff are non-Delaware state law claims, requiring the Court to apply another state's law. Many of the witnesses in this case are also likely to be non-Delaware residents. In contrast, other states have a strong interest in hearing this dispute. As mentioned previously, Ms. Langen is a citizen of Utah and Wilson Sonsini had an office located there. Moreover, Utah is the state where the alleged torts likely took place, where LoveSac was headquartered, and where LoveSac's business was centered. Any interest of Plaintiff to litigate this multi-party dispute in Delaware, which bears no relation to the alleged torts, is outweighed by these factors. To require the Lawyer Defendants, non-Delaware residents, to litigate these non-Delaware state law claims in Delaware would "offend traditional notions of fair play and substantial justice." *See Burger King Corp.*, 471 U.S. at 477.

For these reasons, the exercise of personal jurisdiction over the Lawyer Defendants would be inconsistent with the requirements of due process under the Constitution. Accordingly, this Court must dismiss the Complaint in its entirety as against the Lawyer Defendants.

II.    ALTERNATIVELY, PLAINTIFF'S CLAIMS FOR RELIEF SHOULD BE DISMISSED UNDER 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must "take well-pleaded facts as true but need not credit a complaint's 'bald assertions' or 'legal conclusions.'" *E.g., In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)). As the United States Supreme Court recently explained, "a plaintiff's obligation to provide the 'grounds' of his

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. William Twombly*, 127 S.Ct. 1955, 1964-65 (2007). The United States Court of Appeals for the Third Circuit has explained that "[p]laintiffs' allegations do not suffice" where "plaintiffs simply mouth the required conclusion of law." *Burlington Coat Factory*, 114 F.3d at 1430. Furthermore, "a plaintiff must allege the supporting facts 'necessary to provide the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.'" *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 237 (3d Cir. 2005). Here, Plaintiff has not alleged facts which are "enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965. Rather than plead facts, the Plaintiff here "simply mouth[s] the required conclusion[s] of law" that do not suffice to state a claim under *Burlington Coat Factory*. 114 F.3d at 1430.

A.    Utah Law Applies to Each of Plaintiff's Claims Against the Lawyer Defendants.

When considering the choice of law applicable to tort claims sounding in fraud or misrepresentation, Delaware courts apply the "most significant relationship test" as described in sections 145 and 148 of the Restatement (Second) Of Conflict Of Laws (1971). *E.g., Brown v. SAP Am., Inc.*, No. C.A. 98-507-SLR, 1999 U.S. Dist. LEXIS 15525, at *12-19 (D. Del. Sept. 13, 1999). In the case at bar, this analysis is complex and multilateral, requiring consideration of a matrix of parties, roles, relationships and allegations. That said, the six factors set forth in section 148 of the Restatement (addressing the test in the context of Fraud and Misrepresentation) are:

> 1) the place, or places, where the plaintiff acted in reliance upon defendant's representations,

- Plaintiff acted in reliance on the alleged representations by deciding in Virginia not to re-perfect in Delaware. *See* RESTATEMENT § 148 cmt. f.

2) the place where the plaintiff received the representations,

- Plaintiff received the representations in Virginia, as this is where G&G was located when Ms. Langen allegedly made the representations.

3) the place where the defendant made the representations,

- The place where the alleged representations were made was Utah.

4) the domicile, residence, nationality, place of incorporation and place of business of the parties,

- The location of the domicile, place of incorporation, and place of business of the parties suggests that the law of Virginia may apply. RESTATEMENT § 148 cmt. i. Nevertheless, the relative weight of this factor should decrease when considered in light of the different locations of the numerous parties involved in this suit and the overwhelming relationship Utah bears to LoveSac's business and Plaintiff's claims.

5) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

- The location where a tangible object that was the focus of the transaction favors Utah. The transaction between LoveSac and G&G was a secured loan. Plaintiff's collateral was its borrower's assets -- nearly all of which were located in Utah.

6) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendants.

- The place where plaintiff was to render performance of a contract induced by alleged false representations does not appear particularly applicable to this case; although one could consider Plaintiff's obligation to loan money into Utah or the agreement to extend the maturity presumably a decision made in Virginia by Plaintiff.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148 (1971).

Preliminary consideration of the foregoing factors leads to the conclusion that the law of either Virginia or Utah should apply to Plaintiff's claims against the Lawyer Defendants. When considered in context with the broader provisions of section 6 (delineating general choice of law principles)[4] and section 145 (addressing choice of law in the tort context generally) of the Restatement, however, the common denominator of LoveSac's Utah business should prevail, and the Court should apply Utah law to the tort claims asserted against, among others, the Lawyer Defendants.

Section 145 requires analysis of the following factors which yields the following results:

1) the place where the injury occurred,

- The injury occurred in Virginia.

2) the place where the conduct causing the injury occurred,

- The place where the conduct causing the injury occurred was Utah.

3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

---

[4]    Section 6 of the Restatement (Second) of Conflict of Laws states the following general choice of law principles:

1) the needs of the interstate and international systems,
2) the relevant policies of the forum,
3) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issue,
4) the protection of justified expectations,
5) the basic policies underlying the particular field of law,
6) certainty, predictability and uniformity of result, and
7) ease in the determination and application of the law to be applied.

- This factor weighs in favor of Utah when all parties are considered.

(4) the place where the relationship, if any, between the parties is centered

- This factor overwhelmingly points to Utah as the state with the most significant relationship to the alleged causes of action.

To summarize, the choice of law analysis under section 148, the most specific approach applicable under the Restatement, provides little guidance when deciding between Utah or Virginia. However, when considered with the principles of section 145 of the Restatement generally applicable to all torts, Utah prevails. The single common and unifying theme that runs through the entire case and is the inescapable link between Plaintiff and each defendant is the business activity of LoveSac, an enterprise with its headquarters and principal place of business in Utah. Simply put, Utah has the most significant relationship to the claims asserted. Accordingly, the Court should apply Utah law to the substantive claims against the Lawyer Defendants.

B.    Plaintiff Fails to State a Claim for Fraudulent Concealment
       Against the Lawyer Defendants.

Whether the Court applies Utah or Virginia law, Plaintiff has not pled sufficient facts to entitle it to any relief under a fraudulent concealment theory.

Under Utah law, "[f]raudulent concealment requires that one with a legal duty or obligation to communicate certain facts remain silent or otherwise act to conceal material facts known to him" and "there is an existing fact or condition which the party charged is under a duty to disclose." *Jensen v. IHC Hosps., Inc.*, 82 P.3d 1076, 1101 (Utah 2003) (citations omitted); *see also Smith v. Frandsen*, 94 P.3d 919, 923 (Utah 2004).

Although articulated a bit differently, the law is essentially the same in Virginia, where fraudulent concealment is simply a more specific form of fraud. To demonstrate fraudulent concealment under Virginia law, a plaintiff must first establish a duty to disclose on the part of the defendant. In Virginia, "[c]oncealment of a fact that is material to the transaction, knowing that the other party is acting on the assumption that no such fact exists, is as much fraud as if existence of the fact were expressly denied." *Metrocall of Del., Inc. v. Cont'l Cellular Corp.*, 437 S.E.2d 189, 193 (Va. 1993). Therefore, absent a duty to disclose, "[s]ilence does not constitute concealment." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999); *see Norris v. Mitchell*, 495 S.E.2d 809, 812 (Va. 1998); *see also Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999) ("silence does not constitute fraud in the absence of a duty to disclose").[5] A plaintiff must also show "1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994). Moreover, to establish fraudulent concealment, it is essential that the alleged defrauded party demonstrate the right to reasonably rely upon the misrepresentation. *Metrocall*, 437 S.E.2d at 194.

The Complaint fails here under both Utah and Virginia law because Plaintiff does not plead facts sufficient to support its conclusory and bare allegations of fraudulent concealment

---

[5] The *Norris* case is particularly instructive here. *Norris v. Mitchell*, 495 S.E.2d at 809-12. In *Norris*, the Virginia Supreme Court explained that this form of fraud requires "either an allegation or evidence of a knowing and a deliberate decision not to disclose a material fact." *Id.* at 812. The *Norris* Court affirmed the demurrer of a defendant where a plaintiff home purchaser alleged fraudulent concealment by the seller of limitations of use on a construction permit. *Id.* Because, in part, the construction permit was an official record available for inspection by the public and the plaintiffs "d[id] not allege that the [defendants] did anything to divert them from inspecting the permit," the Court did not find deliberate concealment. *Id.*

by the Lawyer Defendants. *Lynchburg Commc'n Sys. v. Ohio State Cellular Phone Co.*, No. CL02-624, 2003 WL 1247053, at *3 (Va. Cir. Jan. 22, 2003); *see also Brown v. Buschman*, No. Civ.A. 99-108, 2002 WL 389139, at *8 (D. Del. Mar. 12, 2002).  First, while the Complaint makes the bare and unsubstantiated allegation that the Lawyer Defendants owed Plaintiff a duty to disclose and "that Wilson Sonsini and Langen intentionally and knowingly concealed material facts from G&G," the Complaint fails to plead facts that support these conclusory allegations as the law requires.  Plaintiff has not alleged it was Wilson Sonsini's client or that Wilson Sonsini otherwise acted in a fiduciary role for Plaintiff which would give rise to a duty to disclose.  It is hornbook law that a lawyer owes no general duty of disclosure to a non-client, RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 98 cmt. e (2000), and Plaintiff has pled no fact that would create an exception to that rule.

Moreover, Plaintiff fails to allege that it had a "right to <u>reasonably</u> rely upon" the Lawyer Defendants' alleged nondisclosure of the Merger. *Metrocall*, 437 S.E.2d at 194; *see Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999) (stating "in all cases of fraud the plaintiff must prove that it acted to its detriment in actual and justifiable reliance on the defendant's misrepresentation.").  In light of the facts that Plaintiff is a sophisticated, commercial entity with access to publicly available records and that the Merger Certificate has been on file with the Secretary of State since February 25, 2005, Plaintiff has simply not met this burden.  Indeed, Plaintiff admitted in its first complaint filed with the Delaware Bankruptcy Court that the Lawyer Defendants provided it with a "Corporate Resolution, drafted by Wilson Sonsini, authorizing the Loan Amendment [which] recites that the LoveSac Corporation is a Delaware Corporation." (Adv. Pro. No. 06-50786, D.I. 1, ¶ 41.)  Accordingly, Count III must be dismissed under either Utah or Virginia law.

Alternatively, under the Delaware procedural law applicable to this proceeding, Count III should be dismissed because Plaintiff fails to plead fraudulent concealment with particularity. Rule 9(b) of the Federal Rules of Civil Procedure provides in pertinent part: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9. Under Delaware law, a claim of fraudulent concealment is subject to the heightened pleading requirements of Rule 9(b). *Davis v. Grusemeyer*, 996 F.2d 617, 624 n.13 (3d Cir. 1993); *see also Metro Commc'n. Corp. BVI v. Advanced Mobilecomm Tech., Inc.*, 854 A.2d 121, 143-44 (Del. Ch. 2004) (holding that a common law claim for fraudulent concealment must comply with Rule 9(b)). While the Third Circuit applies a "liberal" standard under Rule 9(b), not requiring a complaint to allege every material detail of the fraud, such as date, location, and time, the complaint must still contain "alternative means of injecting precision and some measure of substantiation." *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d 198, 216 (3d Cir. 2002) (quoting *In re Nice Sys., Ltd. Sec. Litig.*, 135 F.Supp.2d. 551, 577 (D.N.J. 2001)) In addition, the Third Circuit has held that "when multiple defendants are involved the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant." *MDNET, Inc. v. Pharmacia Corp.*, 147 Fed.Appx. 239, 245 (3d Cir. 2005); *see also In re Balko*, 348 B.R. 684, at *4-5 (Bankr. W.D. Pa. 2006) (holding "in a case involving multiple defendants, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud'").

In this case, the Complaint fails to meet this standard. The Complaint makes broad, conclusory allegations that fail to identify with any precision specific circumstances of fraudulent conduct. The only allegation regarding the alleged fraudulent conduct is that "Wilson Sonsini and Langen [. . .] knew of the Merger and transfer of assets but knowingly, willfully and

maliciously failed to inform G&G that the Merger and transfer of assets had taken place." (Compl. ¶ 112.)  Even under the Third Circuit's more flexible standard, the general and sweeping statement that the Lawyer Defendants "knowingly, willfully and maliciously" failed to inform the Plaintiff of the merger provides none of the particularity required under Rule 9(b).  Rather, the Plaintiff's bare and unsubstantiated claims of fraudulent concealment are precisely the sort of spurious allegations Rule 9(b) was intended to deter.

Because the claim for fraudulent concealment fails to meet the pleading requirements of Rule 9(b) under Delaware law, Count III should be dismissed.

C.    Plaintiff Fails To State a Claim for Negligent
       Misrepresentation Against the Lawyer Defendants.

Under either Utah or Virginia law, Plaintiff has failed to plead adequately its claim for negligent misrepresentation.

In *Price-Orem Inv. Co. v. Rollins, Brown & Gunnell,* the Utah Supreme Court explained the requirements of a negligent misrepresentation claim:

> [A] party injured by reasonable reliance upon a second party's
> careless or negligent misrepresentation of a material fact may
> recover damages resulting from that injury when the second party
> had a pecuniary interest in the transaction, was in a superior
> position to know the material facts, and should have reasonably
> foreseen that the injured party was likely to rely upon that fact.

713.2d 55, 59 (Utah 1986).  Moreover, Utah's Supreme Court described negligent misrepresentation as follows: "[n]egligent misrepresentation occurs when a person supplies false information for the guidance of others in their business transactions, if the person supplying the information failed to exercise reasonable care or competence in obtaining it."  *Rawson v. Conover,* 20 P.3d 876, 883 (Utah 2001).  The Utah Supreme Court further described the duty owed in relation to a negligent misrepresentation claim as follows: "under negligent

misrepresentation, the duty is to exercise reasonable care or competence in determining the information to be supplied to others for guidance in business transactions." *Id.*; *see also Hughes v. Housely*, 599 P.2d 1250, 1254 (Utah 1979) (holding that a lawyer generally does not owe a duty to a non-client).

In Virginia, there is no separate action for negligent misrepresentation. *See, e.g., Bd. of Dirs. of the Lesner Pointe Condo. on the Chesapeake Bay Ass'n, Inc. v. Harbour Point Bldg. Corp.*, No. CL00-1893, 2002 WL 32072394, at *5 (Va. Cir. June 18, 2002). Instead, "[n]egligent misrepresentation is the essence of a claim for constructive fraud in Virginia." *Hansen v. Stanley Martin Companies, Inc.*, 585 S.E.2d 567, 573 n.4 (Va. 2003) (citing *Richmond Met. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998)). A claim of constructive fraud in Virginia requires a showing "that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation" and "evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that that the person will act upon this representation." *Mortarino v. Consultant Eng'g Serv.*, 467 S.E.2d 778, 782 (Va. 1996).[6]

The Complaint contains merely the conclusory and false allegation that certain documents prepared by the Lawyer Defendants and forwarded to G&G "negligently

---

[6]    In *Mortarino*, the Virginia Supreme Court affirmed the trial court's judgment which sustained the defendant's demurrer because the plaintiff "failed to plead, with the requisite degree of particularity facts which support all the elements of a cause of action for constructive fraud." *Id.* By example, the *Moritarino* Court explained that the plaintiff had "failed to plead that [the defendant] knew or had reason to know that [the plaintiff] would rely upon [the defendant's] alleged misrepresentations or that [the defendant] knew that his representations would be placed in a report that would be used to determine the value of the property." *Id.*; *see also Harbour Point Bldg. Corp.*, 2002 WL 32072394, at *5 (granting a defendant's demurrer where the plaintiff "fail[ed] to provide facts that illustrate how the plaintiffs relied. . .").

misrepresented that LoveSac Utah was an ongoing concern after February 2005." (Compl. ¶ 142.) Plaintiff does not plead facts that would establish the falsity of the alleged representations. For example, although Plaintiff alleges that the Lawyer Defendants advised Plaintiff that its stock was still issued that representation was true. The mere allegation of falsity cannot suffice because it does not provide fair notice to Wilson Sonsini of the grounds on which the claim of negligent misrepresentation rests. Moreover, Plaintiff fails to allege any facts that would establish that the Lawyer Defendants failed to exercise reasonable care or competence with regard to the veracity of the alleged representations. Even more compelling, Plaintiff fails to allege any facts supporting its conclusory statement that it justifiably relied on a supposed false representation, and admits a fact fatal to its ability to establish reasonable reliance: namely, that the Merger Certificate was on file with the Secretary of State since February 25, 2005. (Compl. ¶ 50.) For these reasons, the Complaint fails to satisfy the pleading requirements for a claim of negligent misrepresentation under Utah law and constructive fraud under Virginian law. Accordingly, Count VII of the Complaint should be dismissed for failure to state a claim upon which relief can be granted.

> D.    Plaintiff Fails to State a Claim for Constructive Fraud
>        Against the Lawyer Defendants.

Under Utah law[7], a claim of constructive fraud requires the plaintiff to establish two elements: (1) the existence of a confidential relationship between the parties; and (2) the failure to disclose material facts. *Jensen*, 944 P.2d at 339; *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985) (stating "A confidential relationship is a prerequisite to proving constructive

---

[7]    A constructive fraud claim in Virginia is more closely akin to a claim for negligent misrepresentation as discussed in the preceding section.

23

fraud"). "A confidential relationship arises when one party, having gained the trust and confidence of another, exercises <u>extraordinary</u> influence over the other party." *Von Hake*, 705 P.2d at 769 (emphasis added); *d'Elia v. Rice Dev., Inc.*, 147 P.3d 515, 527 (Utah App. 2006) (stating in the context of addressing a constructive fraud claim that "in Utah, a fiduciary relationship and a confidential relationship are considered one and the same").

The Complaint fails to allege the existence of a confidential relationship between the Lawyer Defendants and Plaintiff, and does not contain any facts that would establish such an extraordinary relationship obligating the Lawyer Defendants to make a disclosure of the merger. Accordingly, Count VIII of the Complaint should be dismissed for failure to state a claim upon which relief can be granted.

E.    Plaintiff Fails to State a Claim for Negligent Supervision
      Against Wilson Sonsini.

Under either the law of Utah or Virginia, Plaintiff does not allege facts sufficient to state a claim for negligent supervision.

In Utah, the elements required to prove negligent supervision are the same as those required to show negligence. *See Jackson v. Righter*, 891 P.2d 1387, 1392 (Utah 1995). The Utah Supreme Court has explained that a "plaintiff must show that the defendant owed the plaintiff a duty, the defendant breached the duty, the breach was a proximate cause of the plaintiff's injuries, and there was in fact injury." *Id.* In the negligent supervision context, "a duty may arise when an employer could reasonably be expected, consistent with the practical realities of an employer-employee relationship, to appreciate the threat to a plaintiff of its employee's actions and to act to minimize or protect against that threat." *Id.* The Utah Supreme Court further explains that the inquiry is whether the employer could reasonably foresee the threat of

injury to the plaintiff from the employee. *See id.* at 1393. Here, the Complaint fails to allege facts supporting forseeability of the harm, and thus fails to adequately allege either a duty owed by the Lawyer Defendants to Plaintiff or breach of any duty.

In Virginia, there is no legally cognizable tort claim for negligent supervision. *See, e.g., Chesapeake and Potomac Tel. Co. v. Dowdy*, 235 Va. 55, 61 (Va. 1988). In *Chesapeake and Potomac Telephone Company of Virginia v. Dowdy*, the Virginia Supreme Court refused to recognize an employee's claim against an employer for negligent supervision of other employees, explaining that "there is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances and we will not create one here." *Id.* Since then, lower state and federal courts in Virginia have relied on the *Dowdy* decision and refused to recognize a cause of action for negligent supervision. *See Muse v. Schleiden*, 349 F.Supp.2d. 990, 1001 (E.D. Va. 2004) (stating that plaintiff's "first theory fails because Virginia does not recognize a claim for negligent supervision"); *Thompson v. Town of Front Royal*, 117 F.Supp.2d 522, 531 (W.D. Va. 2000) (adopting magistrate's findings that Virginia does not recognize a cause of action for negligent supervision); *Millman v. Snyder*, 65 Va. Cir. 62, 64-65 (Va. Cir. Ct. 2004) (listing cases which have refused to recognize a cause of action and refusing to recognize a patient's claim of negligent supervision against a dental office).

Accordingly, the Complaint fails to state a claim of negligent supervision, and Count IX, should be dismissed.

F.     Plaintiff Fails to State a Claim for Negligence Against the Lawyer Defendants.

Whether the Court applies Utah or Virginia law, Plaintiff has not pled sufficient facts to entitle it to any relief under a negligence theory.

Under Utah law, the essential elements for a claim of negligence are (1) a duty of reasonable care owed by the defendant to plaintiff; (2) a breach of that duty; (3) the causation, both actually and proximately, of injury; and (4) the suffering of damages by the plaintiff. *Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985). The same is true in Virginia. *Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 271 Va. 206, 218 (Va. 2006). As a threshold issue, the Utah Supreme Court requires that the plaintiff first establish the defendant owed a duty of care. *See Winters v. Schulman*, 977 P.2d 1218, 1224 (Utah Ct. App. 1999). In fact, without a showing of duty, a plaintiff cannot recover. *Id.*

In Utah, "it is well established 'that the obligation of an attorney is to his [or her] client and not a third party.'" *Id.* (citing *Hughes*, 599 P.2d at 1254); *see also Oxendine v. Overturf*, 973 P.2d 417, 421 (Utah 1999) ("historically, an attorney could not be held liable to a non-client absent fraud, collusion or privity of contract"). Thus, an attorney will be held liable for negligence only to his client, and cannot, in the absence of special circumstances, be held liable to anyone else. *Winters*, 977 P.2d at 1225; *see Hughes*, 599 P.2d at 1253-54. The Utah Supreme Court has extended liability of an attorney to a third party only when it has determined that the third party is the direct and intended beneficiary of the attorney-client agreement. *Oxendine*, 973 P.2d at 421; *see also Atkinson v. IHC Hosps., Inc.*, 798 P.2d 733, 735-36 (Utah 1990) (listing the limited instances where courts in other jurisdictions have extended third-party liability).

Just like in Utah, a Virginia lawyer generally owes no duty to a non-client third party. *See Ayyildiz v. Kidd*, 220 Va. 1080, 1085 (Va. 1980); *see also Mich. Mut. Ins. Co. v. Smoot*, 128 F.Supp.2d. 917, 924 (E.D. Va. 2000) (applying Virginia common law). The Supreme Court of Virginia has stated that "'an attorney's primary and paramount duty'" is to their

client, and liability is generally limited to their client. . . ." *Lynchburg Commc'n Sys.*, 2003

WL 1247053, at *2 (citing *Kidd*, 220 Va. at 1085).   The court in *DuBrueler v. Hartford Fire

*Insurance Co.* stated that:

> Absent special circumstances, it generally is held an attorney can
> be liable for consequences of professional negligence only to a
> client.  The courts reason that if liability would be permitted to a
> third party without regard to privity, the parties to the contract
> would be deprived of control of their own agreement.  Further, the
> duty to the general public resulting from abandonment of the
> privity requirement would place a potentially unlimited burden on
> lawyers.  In other states inroads have been made in the privity
> doctrine as it pertains to legal malpractice, but where these inroads
> have occurred, the third party has been a direct and intended
> beneficiary of the lawyer's services.  An adverse party does not
> stand in this position.

6463, 1983 WL 210333, at *3 (Va. Cir. Sept. 9, 1983).

The Complaint, in a conclusory manner, alleges that the Lawyer Defendants owed

Plaintiff a duty of care because Plaintiff was "an intended beneficiary" of the relationship

between Wilson Sonsini and LoveSac.  (Compl. ¶ 183.)  Under the law of Utah or Virginia, this

allegation fails to establish a duty owed to Plaintiff.   "[T]he test for third party recovery is

whether the intent to benefit actually existed . . ." *Atkinson*, 798 P.2d at 735; *see Prof'l Realty*

*Corp. v. Bender*, 222 S.E.2d 810, 812 (Va. 1976) ("The third party beneficiary doctrine is subject

to the limitation that the third party must show that the parties to the contract clearly and

definitely intended it to confer a benefit upon him").  Plaintiff does not allege any fact that would

support the allegation that the Lawyer Defendants or LoveSac intended to confer a benefit upon

G&G.  Rather, Plaintiff was a counter-party to the Lawyer Defendants' client in an arm's length,

negotiated, commercial transaction.  As such, the Lawyer Defendants did not owe Plaintiff a

duty of care.  *See Lynchburg Commc'n Sys.*, 2003 WL 1247053, at *2; *DuBrueler*, 1983 WL

210333, at *3 ("An adverse party does not stand in th[e] position [of an intended beneficiary]").

Accordingly, the Complaint fails to state a claim of negligence, and Count X must be dismissed.

> G.    Plaintiff Fails to State a Claim for Respondeat Superior Against Wilson Sonsini.

Under either Utah or Virginia law, Plaintiff has not pled sufficient facts to entitle it to any relief under the doctrine of respondeat superior.

In Utah, as in Virginia, under the doctrine of respondeat superior, employers are held vicariously liable for the torts their employees commit when the employees are acting within the scope of their employment. *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1040 (Utah 1991); *Birkner v. Salt Lake County*, 771 P.2d 1053, 1056 (Utah 1989); *Kensington Assocs. v. West*, 362 S.E.2d 900, 901 (Va. 1987). The Utah Supreme Court has stated that scope of employment "refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods . . . of carrying out the objectives of the employment." *Birkner*, 771 P.2d at 1056. Articulating the scope of respondeat superior in *Kensington Associates*, the Virginia Supreme Court stated:

> An act is within the scope of the employment if (1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, "and did not arise wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account."

*Id.*; *see also Broaddus v. Standard Drug Co., Inc.*, 179 S.E.2d 497, 504-05 (Va. 1971). Nevertheless, in either jurisdiction, the extension of liability to an employer is wholly dependent

28

upon the underlying tort of the employee. *See Mann v. Wadsworth*, 776 P.2d 926, 929-30 (Utah App. 1989) (finding vicariously liability does not exist apart from the employee's underlying tort); *see Rowland v. State Farm Fire & Cas. Co.*, No. 207244, 2003 WL 22779071, at *3 (Va. Cir. Oct. 14, 2003).

Here, the Complaint fails to state a claim for an underlying tort in the scope of Ms. Langen's employment under applicable law. Accordingly, Count XI should be dismissed.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Wilson Sonsini and Ms. Langen request that this Court enter an Order: (i) dismissing Counts III (Fraudulent Concealment), VII (Negligent Misrepresentation), VIII (Constructive Fraud), IX (Negligence), X (Negligent Supervision) and XI (Respondent Superior) as requested in the Motion, and (ii) granting such other and further relief as is just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Thomas C. Grimm (No. 1098)
Derek C. Abbott (No. 3376)
Ian R. McConnel (No. 4888)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendants*
*Wilson, Sonsini, Goodrich & Rosati P.C. and Lily*
*Wong Langen*

September 24, 2007

1219108.9

## CERTIFICATE OF SERVICE

I, Ian R. McConnel, certify that I am not less than 18 years of age, and that service
of the foregoing **Defendants Wilson, Sonsini, Goodrich & Rosati, P.C. And Lily Wong Langen**
**Opening Brief In Support Of Their Motion To Dismiss The Plaintiff G&G, LLC's Complaint**
was made on September 24, 2007, in the manner shown, upon the entities on the attached list.

Dated:  September 24, 2007

_____
Ian R. McConnel (No. 4888)

793684.1

# SERVICE LIST

| VIA HAND DELIVERY | VIA FIRST CLASS U.S. MAIL |
|---|---|
| Thomas G. Macauley, Esquire | Marc E. Albert, Esquire |
| Virginia Whitehill Guldi, Esquire | Lawrence P. Block, Esquire |
| Elizabeth D. Power, Esquire | Katherine M. Sutcliffe Becker, Esquire |
| Zuckerman Spaeder LLP | Stinson Morrison Hecker LLP |
| 919 Market Street, Suite 990 | 1150 18th Street NW, Ste. 800 |
| P.O. Box 1028 | Washington D.C. 20036 |
| Wilmington, DE 19899 | |
| | Michael L. Scheier, Esquire |
| Michael A. Weidinger, Esq. | Joseph L. Bruemmer, Esquire |
| Joseph S. Naylor, Esq. | Keating, Muething & Keklamp PLL |
| Morris James LLP | One East Fourth Street |
| 500 Delaware Avenue, Suite 1500 | Suite 1400 |
| Wilmington, DE 19801 | Cincinnati, OH 45202 |

1241574.1