## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| G&G, LLC | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | Case No. 07-440 (SLR) |
| v. | : | |
| | : | |
| JAMES HYDE, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ANSWERING BRIEF OF PLAINTIFF G&G, LLC IN OPPOSITION TO DEFENDANTS WILSON, SONSINI, GOODRICH & ROSATI, P.C. AND LILY WONG LANGEN'S MOTION TO DISMISS G&G, LLC'S COMPLAINT

ZUCKERMAN SPAEDER LLP
Thomas G. Macauley (ID No. 3411)
Virginia Whitehill Guldi (ID No. 2792)
919 Market Street, Suite 990
P.O. Box 1028
Wilmington, DE 19899
(302) 427-0400

STINSON MORRISON HECKER LLP
Marc E. Albert
Janet M. Nesse
Lawrence P. Block
Katherine M. Sutcliffe Becker
1150 18th Street NW, Suite 800
Washington, DC  20036-3816
(202) 785-9100

*Attorneys for G&G, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

NATURE AND STAGE OF PROCEEDING ........................................................ 1

SUMMARY OF ARGUMENT ........................................................................... 2

STATEMENT OF FACTS ................................................................................. 3

ARGUMENT ................................................................................................... 4

I.     Personal Jurisdiction .............................................................................. 4

    A.     Legal Standard ............................................................................. 4

    B.     Delaware Long-Arm Statute ......................................................... 4

        1.     General Jurisdiction over Wilson Sonsini ................................ 5

        2.     Specific Jurisdiction over Wilson Sonsini. ............................. 7

        3.     Specific Jurisdiction over Langen .......................................... 8

    C.     Constitutional Due Process ........................................................... 8

II.    Failure to State a Claim ......................................................................... 10

    A.     Legal Standard ........................................................................... 10

    B.     Choice of Law – Delaware Choice of Law Principles ..................... 11

        1.     Choice of Law for Fraudulent Concealment and Constructive Fraud ................................................................. 12

        2.     Choice of Law for Remaining Causes of Action. ..................... 13

    C.     The Complaint States a Cause of Action for Fraudulent Concealment under Virginia and Utah Law .................................. 14

        1.     Virginia Law. ....................................................................... 15

        2.     Utah Law ............................................................................. 18

        3.     The Complaint Pleads Fraudulent Concealment With the Requisite Particularity. .......................................................... 20

    D.     The Complaint States a Cause of Action for Negligent Misrepresentation under Utah and California Law ......................... 21

        1.     Utah Law. ............................................................................. 21

        2.     California Law. ..................................................................... 24

    E.     Constructive Fraud ..................................................................... 26

    F.     Negligent Supervision ................................................................. 27

        1.     California Law. ..................................................................... 27

        2.     Utah Law. ............................................................................. 28

G.      Negligence. ...........................................................................................30
      1.     California Law. ..................................................................30
      2.     Utah Law ...........................................................................32
H.      Respondeat Superior/Vicarious Liability...............................................34
      1.     California Law. ..................................................................34
      2.     Utah Law............................................................................35

Error! Unknown document property name.

# TABLE OF AUTHORITIES

CASES

*Atkinson v. IHC Hospitals, Inc.,*
798 P.2d 733 (Utah 1990) ............................................................................. 30

*Auerbach v. Rival Manufacturing,*
809 F.2d 1016 (3d Cir. 1987) ........................................................................ 7

*Ayyildiz v. Kidd,*
266 S.E.2d 108 (1980) .................................................................................. 14

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
305 F. 3d 120 (2d Cir. 2002) ........................................................................ 6

*Bank of Montreal v. Signet Bank,*
193 F.3d 818 (4th Cir. 1999) ................................................................. 12, 15

*Baptist v. Robinson,*
2006 Cal. App. LEXIS 1454 ................................................................. 27, 31

*Brown v. SAP America,*
1999 U.S. Dist. LEXIS 15525 (D.Del.) ..................................................... 8-9

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ................................................................................... 6-7

*Christ v. Cormick,*
2007 U.S. Dist. LEXIS 49825 ................................................................. 1, 4

*Clover v. Snowbird Ski Resort,*
808 P.2d 1037 (Utah 1991) .......................................................................... 31

*DeBry v. Valley Mortgage,*
835 P.2d 1000 (Utah 1992) .................................................................... 16, 29

*Delfino v. Agilent Technologies,*
2006 Cal. App. LEXIS 1937 ........................................................................ 24

*Digene Corp. v. Ventana Medical Systems,*
316 F. Supp. 2d 174 (D.Del. 2004) ............................................................. 3

*Evaluation Research Corp. v. Alequin,*
439 S.E. 2d 387 (Va. 1994) ................................................................... 12, 14

*FDIC v. O'Melveny & Myers,*
969 F.2d 744 (9th Cir.) *rev'd on other grounds,* 512 U.S. 79 (1994) .......................................... 28

*Firoozye v. Earthlink Network,*
153 F. Supp. 2d 1115 (N.D. Cal. 2001) ....................................................... 21

*Foster Wheeler Energy Corp. v. Metallscesellschafft AG,*
1993 U.S. Dist. LEXIS 20450 ...................................................................... 2

Error! Unknown document property name.

*G&G, LLC v. Nelson, et al.,* Adversary Proceeding
No. 06-50786 ("Adversary Proceeding") ............................................................ 1

*Goldstein v. Malcolm G. Fries,*
72 F. Supp. 2d 620 (E.D. Va. 1999) ................................................................ 17

*Guy v. Tidewater Investment Properties,*
41 Va. Cir. 218 (1996) ...................................................................................... 13

*Hafen v. Strebeck,*
338 F. Supp. 2d 1257 (D. Utah 2004) ............................................ 17, 20, 26, 29

*Hamlett v. Virginia Vascular Associates,*
61 Va. Cir. 468 (2003) ...................................................................................... 17

*Hewlett v. Hewlett-Pack*ard ................................................................................ 3

*Hewlette v. Hovis,*
318 F. Supp. 2d 332 (E.D. Va. 2004) .............................................................. 15

*Hitachi Credit v. Signet Bank,*
166 F.3d 614 (4th Cir. 1999) ............................................................................ 15

*In re Suprema Specialties,*
438 F.3d 256 (3d Cir. 2006) ............................................................................. 18

*In re Teleglobe Communications Corp.,*
493 F.3d 345 (3d Cir. 2007) ............................................................................... 8

*In re: Veritas Software Corp.,*
2006 U.S. Dist. LEXIS 32619 (D.Del.) .............................................................. 3

*Integral Resources v. Istil Group,*
2004 Bankr. LEXIS 1859 (D. Del.) ................................................................. 11

*Intel Corp. v. Broadcom,*
167 F. Supp. 2d 693 (D. Del. 2001) .................................................................... 5

*Intel Corp. v. Broadcom Corp.,*
167 F. Supp. 2d 692 (D.Del. 2001) .............................................................. 2-3, 7

*International Shoe Co. v. Washington,*
326 U.S. 310 (1940) ............................................................................................ 5

*Jackson v. Righter,* 891 P.2d 1387 (Utah 1995) ............................................... 26

*Keru Investments v. Cube Company,*
63 Cal. App. 4th 1412 (1998) ........................................................................... 28

*Lynchburg Communications Systems v. Ohio State Cellular Phone Company,*
61 Va. Cir. 82 (2003) ........................................................................................ 14

*Metallgesellschaft v. Foster Wheeler Energy Corp.,*
143 F.R.D. 553 (D. Del. 1992) ............................................................................ 1

*Mobilificio San Giacomo v. Stoffi,*
1996 U.S. Dist. LEXIS 21545 ............................................................................. 4

iv

*Moorman Mfg. v. National Tank*,
   435 N.W. 2d 443 (1982) ..................................................................................... 29

*Ofoma v. Armour*,
   1998 U.S. Dist. LEXIS 11052 (D. Ill.) ............................................................ 24

*Onita Pac. Corp. v. Trustees of Bronson*,
   843 P.2d 890 (Ore. 1992) ................................................................................... 29

*Pavicich v. Santiucci*,
   85 Cal. App. 4th 382 (2000) ............................................................................. 25

*Petruska v. Gannon Univ.*,
   2006 U.S. App. LEXIS 22682 ............................................................................ 7

*Provident Nat'l Bank v. California Federal Sav. & Loan Assoc.*,
   819 F.2d 434 (3d Cir. 1987) ................................................................................ 1

*Riggs National Bank v. Ross*,
   180 B.R. 121 (Bankr. E.D. Va. 1994) .............................................................. 12

*Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*,
   57 Cal. App. 3d 104 (1976) ....................................................................... 24-25, 27

*Robinson v. Tripco* ................................................................................................ 21

*Smith v. Frandsen*,
   94 P.3d 919 (Utah 2004) ................................................................................... 15

*State Farm v. Remley*,
   618 S.E.2d 316 (Va. 2005) ............................................................................... 23

*Swierkiewicz v. Sorena N.A.*,
   534 U.S. 506 (2002) ............................................................................................. 8

*Tse v. Ventana Medical Systems*,
   123 F. Supp. 2d 213 (D. Del. 2000) ................................................................... 3

*Utah Foam Products v. Upjohn*,
   950 F. Supp. 513 (D. Utah 1996) ..................................................................... 18

*Van Dusen v. Snead*,
   441 S.E. 2d 247 (Va. 1994) ............................................................................... 12

*Visx Inc. v. Lasersight Inc.*,
   2001 U.S. Dist. LEXIS 25579 ............................................................................. 3

*Watchmark Corp. v. Argo*,
   2004 Del Ch. LEXIS 175 ..................................................................................... 3

*West v. Inter-Financial, Inc.*,
   139 P.3d 1059 (Utah 2006) ............................................................................... 30

*Winters v. Shulman*,
   977 P.2d 1218 (Utah 1999) ............................................................................... 29

Error! Unknown document property name.

**STATUTES**

Cal. Civ. Code § 2338 ................................................................................................31

Del. Code Ann. tit. 10, § 3104(c)(4) ............................................................................2

**RULES**

Fed. R. Civ. P. 8 ........................................................................................................18

Fed. R. Civ. P. 9(b) ..............................................................................................16, 18

Fed. R. Civ. P. 12(b)(2) ...........................................................................................1-2

Fed. R Civ. P. 12(b)(6) ................................................................................................2

Fourteenth Amendment ........................................................................................1, 5, 7

Restatement (Second) of Torts § 522: .......................................................................30

Error! Unknown document property name.

## NATURE AND STAGE OF PROCEEDING

This action was originally filed on July 25, 2006, as an adversary proceeding in the U.S. Bankruptcy Court for the District of Delaware, styled *G&G, LLC v. Nelson, et al., Adversary Proceeding No. 06-50786* ("Adversary Proceeding").     Following extensive discovery, the Adversary Proceeding was dismissed for lack of subject matter jurisdiction. G&G re-filed in this Court on August 3, 2007 (D.I.1).  The Complaint named 16 defendants, each of whom were defendants in the Adversary Proceeding.   An Amended Complaint, which named the identical defendants, was filed on August 30, 2007 (D.I.19).   Defendants Walnut Investment Partners LP, Walnut Private Equity Fund LP, The Walnut Group, Millevere Holdings, Ltd., David Yarnell, James Gould, Simon Wright, Walt Spokowsi and Brand Equity Ventures II LP filed a Motion to Dismiss on September 21, 2007 (D.I. 28, 29). At the same time, Defendants David Yarnell, James Gould, Simon Wright, Walt Spokowski,  and Millevere Holdings, Ltd. filed an additional Motion to Dismiss (D.I. 26, 27). This Brief is filed in opposition to the Motion to Dismiss of Defendants Wilson, Sonsini, Goodrich & Rosati ("Wilson Sonsini") and Lily Wong Langen ("Langen") (D.I. 30, 31).[1]

---

[1] Defendants Craig Cox, Doyle Judd, Verdi White and Tim Weiland have not yet responded.  A Consent Judgment was entered against Defendant James Hyde on September 25, 2007. (D.I. 32).

Error! Unknown document property name.

## SUMMARY OF ARGUMENT

The Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) should be denied because this Court has both specific and general jurisdiction over both Wilson Sonsini and specific jurisdiction over Langen.  The Fed. R Civ. P. 12(b)(6) Motion should also be denied because G&G has stated a claim against Wilson Sonsini and Langen for Fraudulent Concealment, Negligent Misrepresentation, Constructive Fraud and Negligence, and has stated additional claims against Wilson Sonsini for Negligent Supervision and Respondeat Superior/Vicarious Liability.

Error! Unknown document property name.

## STATEMENT OF FACTS

As its Statement of Facts, G&G relies on the Statement of Facts contained in its

Amended Complaint (D.I. 19), as if set forth herein.

# ARGUMENT

## I.     Personal Jurisdiction

### A.     Legal Standard

The determination of whether personal jurisdiction exists requires a two-step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Christ v. Cormick*, 2007 U.S. Dist. LEXIS 49825, at * 6. When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the Plaintiff and resolve all factual disputes in the Plaintiff's favor. Once a jurisdictional defense has been raised, the Plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. *Provident Nat'l Bank v. California Federal Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987). While trial judges enjoy substantial procedural flexibility in handling Rule 12(b)(2) motions, the record must clearly establish that after jurisdiction was challenged the nonmoving party had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of its jurisdictional contentions. *Metallgesellschaft v. Foster Wheeler Energy Corp.*, 143 F.R.D. 553, 559 (D. Del. 1992).

### B.     Delaware Long-Arm Statute

As pertinent here, the Delaware long-arm statute, Del.. Code Ann. tit. 10, § 3104, provides as follows:

> (c)  As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a persona representative, who in person or through an agent:

(1) Transacts any business or performs any character of work in the State;

***

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

Del. Code Ann. tit. 10, § 3104(c)(1) provides for jurisdiction over non-residents who transact business in Delaware. Delaware state courts have interpreted § 3104(c)(1) to be a specific jurisdiction provision. *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 700 (D.Del. 2001). Specific jurisdiction requires that there be a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. On the other hand, Del. Code Ann. tit. 10, § 3104(c)(4), authorizes jurisdiction even when both the tortious acts and the injury occur outside of Delaware, although this exercise of general jurisdiction requires a higher level of activity than the exercise of specific jurisdiction. *Foster Wheeler Energy Corp. v. Metallscesellschafft AG*, 1993 U.S. Dist. LEXIS 20450, at * 17 (D. Del. 1993). As discussed below, the Court in this case, can exercise both general and specific jurisdiction over Wilson Sonsini and specific jurisdiction over Langen.

## 1.    General Jurisdiction over Wilson Sonsini

The Amended Complaint alleges that Wilson Sonsini is a California professional corporation (Amended Complaint ¶ 26) and that the court has personal jurisdiction over Wilson Sonsini because it transacts business or performs work or services in the State of Delaware. (Amended Complaint, ¶ 8). In the Motion, Wilson Sonsini asserts that the Amended Complaint "is devoid of any fact that would establish that the Lawyer Defendants (Wilson Sonsini) have any contact, let alone 'continuous or systematic' contacts, with Delaware sufficient to satisfy the high bar required for general jurisdiction." (Motion, p. 10). Significantly, Wilson Sonsini never denies that it

has the necessary contacts.   Any such denial would strain credulity in light of the significant

contacts the firm has with the State of Delaware.   Evidence of those contacts includes the following:

- In its firm Brochure, attached as Exhibit A (Appendix, pp.1-28), Wilson Sonsini advertises that it "has an impressive track record in the Delaware Chancery Court and the Delaware Superior Court."

- In a list of Wilson Sonsini Securities Class Action Motion to Dismiss Wins, which is posted on its website, www.wsgr.com, Wilson Sonsini includes the Ventana Medical Systems Securities Litigation, which was dismissed by the Delaware Chancery Court and affirmed by the Delaware Supreme Court.  The list is attached as Exhibit B (Appendix, p. 29).

- Wilson Sonsini's website, www.wsgr.com, includes a map of the United States, which highlights the jurisdictions in which Wilson Sonsini has defended securities class actions. The map, attached as Exhibit C (Appendix, p. 30), shows that Delaware is one of those jurisdictions.

- In addition, the website touts victories in *Hewlett v. Hewlett-Pack*ard following an "expedited three-day trial" in "a Delaware Court," as well as a complete defense verdict in *Intel v. Broadcom* (D.Del.), after a two and a half week jury trial.  The relevant pages of the website are attached as Exhibit D (Appendix, pp. 31-34).

- Wilson Sonsini has litigated numerous other cases in the federal and state courts in Delaware.  The first page of the written opinions in some of those cases, attached as Exhibit E (Appendix, pp. 35-44), show that Wilson Sonsini served as counsel in the following cases:[2]

> *Watchmark Corp. v. Argo*,  2004 Del Ch. LEXIS 175.

> *Tse v. Ventana Medical Systems*, 123 F. Supp. 2d 213 (D. Del. 2000).

> *Visx Inc. v. Lasersight Inc.*, 2001 U.S. Dist. LEXIS 25579,

> *Digene Corp. v. Ventana Medical Systems*, 316 F. Supp. 2d 174 (D.Del. 2004).

> *In re: Veritas Software Corp.*, 2006 U.S. Dist. LEXIS 32619 (D.Del.)

Wilson Sonsini's  website and firm brochure show that Wilson Sonsini regularly does or

solicits business in Delaware.  The extensive history of litigation before the Delaware courts shows

---

[2] This is only a representative sample of cases found in the LEXIS.com database.

that Wilson Sonsini engages in a persistent course of conduct in the State and probably derives substantial revenue from services provided in the State.

### 2.    Specific Jurisdiction over Wilson Sonsini.

Specific jurisdiction exists under §3104(c)(1), where a nonresident defendant has "purposely directed" his activities at residents of the forum state and the litigation results from alleged injuries that "arise out of" or "relate to" those activities. *Mobilificio San Giacomo v. Stoffi*, 1996 U.S. Dist. LEXIS 21545, at * 6 . Here, there is ample evidence that Wilson Sonsini was actively involved in the incorporation and Merger in Delaware:

- Wilson Sonsini admits that it "represented LovSac and prepared the merger documentation." (Motion, p. 4).

- Prior to the reincorporation in Delaware, Wilson Sonsini prepared a document entitled "Significant Differences Between the Corporation Laws of Delaware and Utah," which explained the benefits of incorporating in Delaware over remaining in Utah. A copy of that document is attached as Exhibit F (Appendix, pp. 45-51).

- As evidenced by the "Reincorporation of the LoveSac Corporation Closing Volume" dated February 5, 2005, Wilson Sonsini was intimately involved in every phase of the Merger. The Title page of the Volume is attached as Exhibit G (Appendix, p. 52)..

- Pursuant to the Certificate of Incorporation of LoveSac Delaware, dated December 10, 2004, the sole incorporator of LoveSac Delaware was Jason K. Robertson, of Wilson Sonsini Goodrich & Rosati, located at the firm's address, 2795 East Cottonwood Parkway, Suite 300, Salt Lake City, UT, 84121. A coy of the Certificate of Incorporation is attached as Exhibit H (Appendix, pp. 53-55).

This Court has ruled that a single act of incorporation in Delaware will suffice to confer personal jurisdiction over a nonresident defendant if such purposeful activity in Delaware is an integral component of the total transaction to which plaintiff's cause of action relates. *Christ v. Cormick*, 2007 U.S. Dist. LEXIS 49825 (D. Del.). In this case, the incorporation is closely related to the causes of action against Wilson Sonsini, all of which grow out of its fraudulent concealment

of the incorporation and Merger from G&G and misrepresentations concerning the corporate status of LoveSac.

### 3.   Specific Jurisdiction over Langen

Like Wilson Sonsini, Langen has purposely directed her activities toward the State of Delaware.  Even after the reincorporation in Delaware and subsequent merger between LoveSac Utah and LoveSac Delaware, Langen continued to represent the Delaware company.  For example in a letter to LoveSac (Delaware) shareholders, dated December 7, 2005, shareholders are asked to approve certain actions related to bridge financing for LoveSac Delaware.  Shareholders are directed to execute the signature pages of an Action by Written Consent and to return the pages to Ms. Langen.  A copy of the Letter is attached as Exhibit I (Appendix, pp. 56-62).

### C.   Constitutional Due Process

The second part of the Court jurisdictional inquiry is to determine whether the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.  *See Intel Corp. v. Broadcom*, 167 F. Supp. 2d 693, 705 (D. Del. 2001).  Due Process requires that a defendant must have sufficient minimum contacts with the forum state such that maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice.  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1940).  To satisfy this requirement, the defendant must purposefully avail itself of the benefits of the forum state such that it is able to reasonably foresee that it might be "haled before a court" in the forum as  a result of its conduct. *Intel Corp. v. Broadcom*, 167 F. Supp. 2d 693, 705 (D. Del. 2001).

In a pertinent case involving an out of state law firm's representation of a New York client, the Court determined that the firm's contacts with New York were not the kind of "random, fortuitous, or attenuated contacts" or unilateral activity of another party or a third person" that the purposeful availment requirement was designed to eliminate as a basis for jurisdiction.  "The

engagement which gave rise to the dispute here is not simply one of a string of fortunate coincidences for the law firm. Rather, the picture which emerges... is that of a law firm which seeks to be known in the New York legal market, makes efforts to promote and maintain a client base there, and profits substantially there from." Under such circumstances, the Court held that there was nothing fundamentally unfair about requiring the firm to defend itself in the New York courts. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F. 3d 120, 128-129 (2d Cir. 2002).

Although Wilson Sonsini and Langen have purposefully availed themselves of the privilege of conducting activities within Delaware, they argue that requiring them to defend this action in Delaware would "offend traditional notions of fair play and substantial justice." (Motion, p. 12). In support, Wilson Sonsini and Langen rely on their analysis of a number of factors mentioned by the Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

First, according to Wilson Sonsini and Langen, litigation in Delaware will create a significant financial burden and inconvenience for them as out of state residents. That contention is patently ridiculous in light of the frequency with which Wilson Sonsini litigates in Delaware courts. The second factor is the plaintiff's interest in obtaining convenient and effective relief. That interest clearly supports litigating this case in Delaware, which may be the only jurisdiction in which all defendants are subject to the personal jurisdiction of the Court. Similarly, the third and fourth cited factors, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interests of the several States in furthering fundamental substantive social policies, suggest that this litigation should proceed in Delaware to avoid the necessity of filing a multiplicity of suits in other jurisdiction. Furthermore, while the Motion seems to suggest that Utah has the strongest interest in this litigation (Motion, p. 12), it ignores the fact that Wilson

Sonsini and Langen encouraged LoveSac Utah to reincorporate in Delaware and that the bankruptcy filing also occurred in Delaware.

Generally, cases in which maintaining a lawsuit would offend constitutional due process despite the existence of a statutory basis for jurisdiction are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum. *Intel Corp. v. Broadcom*, 167 F. Supp.2d 692, 705 (D.Del. 2001). Here, however, the factors mentioned by Wilson Sonsini and Langen actually "serve to establish the reasonableness of jurisdiction," *Burger King Corp*., at 477, rather than making litigation "so gravely difficult and inconvenient" that Wilson Sonsini and Langen will be at a "severe disadvantage." *Id.* at 478.

As shown above, the Delaware Long-Arm statute clearly contemplates the exercise of personal jurisdiction over Wilson Sonsini and Langen. It is equally clear that subjecting Wilson Sonsini and Langen to jurisdiction in Delaware comports with the Due Process Clause of the Fourteenth Amendment.

## II.    Failure to State a Claim

In their Motion, Wilson Sonsini and Langen argue that each Count of the Amended Complaint is governed by Utah law and that under Utah law, G&G has failed to state a claim upon which relief can be granted. As discussed below, several of the counts are actually governed by Virginia law, the domicile of G&G and the situs of the injury caused by Wilson Sonsini and Langen. The following sections will also demonstrate that each count against Wilson Sonsini and Langen adequately states a claim under either Virginia or Utah law, or both.

### A.    Legal Standard

For purposes of a Motion to Dismiss, the Court must accept as true the Plaintiff's factual allegations. *Petruska v. Gannon Univ.*, 2006 U.S. App. LEXIS 22682 (3d. Cir.). In deciding

whether a Complaint states a cause of action, the Court is bound to consider not only the statements in the pleading itself but also to draw reasonable inferences in favor of the pleader. *Auerbach v. Rival Manufacturing*, 809 F.2d 1016, 1020 (3d Cir. 1987). Finally, "the federal rules reject the approach that pleading is a game of skill....and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. *Swierkiewicz v. Sorena N.A.*, 534 U.S. 506, 514 (2002).

**B.    Choice of Law – Delaware Choice of Law Principles**

Before addressing the sufficiency of a complaint, the Court must determine which state's law applies to the asserted claims. *Brown v. SAP America,* 1999 U.S. Dist. LEXIS 15525, (D.Del.). A federal court exercising jurisdiction over state-law claims will apply the choice-of-law rules of the forum state. *See In re Teleglobe Communications Corp.*, 493 F.3d 345, 358 (3d Cir. 2007).

With regard to tort claims, Delaware courts have adopted the "most significant relationship" test, which provides that the rights and liabilities of the parties with respect to an issue in a tort case are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties. *Brown v. SAP America,* 1999 U.S. Dist. LEXIS 15525, at *18. The "most significant relationship test" is a general rule, while more detailed factors are used to assess the significance of a state's relationship to particular torts. *Id.*

Wilson Sonsini and Langen assert that all counts in this action should be governed by Utah law. The contention is based on the claim that "[t]he single common and unifying theme that runs through the entire case and is the inescapable link between Plaintiff and each defendant is the business activity of LoveSac, an enterprise with its headquarters and principal place of business in Utah." (Motion, p. 16). Choice of law rules are not, however, dependent on the

existence of a "unifying theme." Even if they were, G&G asserts that the unifying theme of this case is the role of each defendant in causing, and then concealing, the Merger of LoveSac Utah into LoveSac Delaware for the purpose of perpetrating a fraud on G&G.

Instead of relying on "unifying themes," Delaware courts have adopted the "most significant relationship" test, which provides that the rights and liabilities of the parties with respect to an issue in a tort case are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties. *Brown v. SAP America,* 1999 U.S. Dist. LEXIS 15525, at *18. The "most significant relationship test" is a general rule, while more detailed factors are used to assess the significance of a state's relationship to particular torts. *Id.*

### 1.    Choice of Law for Fraudulent Concealment and Constructive Fraud

In making a choice of law determination in a fraud case, Delaware courts look to:

a.    Place where the injured party acted in reliance upon defendants' representations.

b.    Place where injured party received the representations.

c.    Place where defendants made the representations.

d.    Domicile, place of incorporation, and place of business of the parties.

e.    Place where a tangible thing or subject of transaction between the parties was situated.

f.    Place where the injured party is to render performance under a contract which it has been induced to enter by the false representations f the defendants.

*Brown v. SAP America, Inc.*, 1999 U.S. Dist. LEXIS 15525, at *18.

In this case, the injured party (G&G) received Langen's representations in Virginia, acted on those representations in Virginia, and was required to perform in Virginia. G&G is domiciled and incorporated in the Commonwealth of Virginia and its primary and only physical place of business is in Virginia, although it makes loans in other jurisdictions. Pursuant to *Brown,* when

12

two of the factors are wholly located within a single state that state's law will apply. Although Wilson Sonsini and Langen made the representations in either California or Utah and Wilson Sonsini is incorporated in California, the fact that more than two of the *Brown* factors are wholly located within Virginia mandates that Virginia's law will apply to Count III (Fraudulent Concealment) and Count VIII (Constructive Fraud).

Upon a "preliminary consideration" of the same factors, Wilson Sonsini and Langen turn to the Restatement of Torts and conclude that either Virginia or Utah should apply to Plaintiff's claims…." (Motion, p. 14). Then they argue that only Utah law should apply because "[t]he single and unifying theme that runs through the entire case and is the inescapable link between Plaintiff and each defendant is the business activity of LoveSac, an enterprise with its headquarters and principal place of business in Utah. Assuming *arguendo*, that the Restatement principles, relied on in the Motion, take precedence over the Delaware choice of law rules, the unifying theme of this case is not LoveSac but rather the role of each defendant in causing, and then concealing, the Merger of LoveSac Utah into LoveSac Delaware for the purpose of perpetrating a fraud on G&G.

While it is true that a number of the defendants in this suit are residents of Utah, the parties that are the subject of the Motion to Dismiss are G&G, Wilson Sonsini, and Langen. G&G is incorporated in Virginia; Wilson Sonsini is incorporated in California, with offices in both California and Utah; and Langen has been a resident of both Utah and California. While all of the relevant facts concerning Wilson Sonsini and Langen are not yet known, it is beyond dispute that the that the injury to G&G, a Virginia resident, occurred in Virginia.

## 2.    Choice of Law for Remaining Causes of Action.

In determining the applicable law in non-fraud tort cases, Delaware courts review the following factors:

13

    a.      Place where injury occurred.

    b.      Place where conduct causing injury occurred.

    c.      Domicile, residence, nationality, place of incorporation, and place of business of the parties.

    d.      Place where the relationship of the parties is centered.

*Integral Resources v. Istil Group*, 2004 Bankr. LEXIS 1859 (D. Del.)  In this case, the injury occurred in Virginia, which is the residence, domicile, place of business and state of incorporation of G&G.   The conduct causing the injury occurred either in California, where Wilson Sonsini is incorporated and where Langen worked (and is the only state in which she is licensed to practice law) or in Utah, where Langen also worked.   While G&G is entirely located in Virginia, Wilson Sonsini and Langen are in both California and Utah.   Finally, the parties' relationship is clearly centered in Virginia, where the loan to LoveSac originated and is the State to which Wilson Sonsini and Langen directed their communications regarding the loan.

Because Delaware courts place considerable emphasis on the place where the injury occurred and the place where the conduct causing the injury occurred and because the place where the conduct causing the injury can not be established prior to completion of discovery, a final determination as to choice of law must be postponed.  For purposes of this Motion, it can be assumed that Virginia, Utah or California Law will apply to the remaining Counts against Wilson Sonsini and Langen.

### C.    The Complaint States a Cause of Action for Fraudulent Concealment under Virginia and Utah Law

As discussed above, Count III of the Amended Complaint - Fraudulent Concealment - is governed by Virginia law.  The following sections show that the Count states a claim against Wilson Sonsini and Langen under both Virginia and Utah law.

### 1.    Virginia Law.

Count III of the Amended Complaint charges Wilson Sonsini, Langen and other defendants with Fraudulent Concealment. As stated by the U.S. Court of Appeals for the Fourth Circuit, "Virginia recognizes fraud by omission, sometimes called concealment." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826 (4th Cir. 1999). Concealment of a material fact may constitute sufficient misrepresentation to maintain an action for fraud. *Van Dusen v. Snead*, 441 S.E. 2d 247 (Va. 1994).

In the Motion, Wilson Sonsini and Langen list the elements of a cause of action for fraud in Virginia as (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party mislead, and (6) resulting damage to the party mislead. According to the case cited, *Evaluation Research Corp. v. Alequin,* 439 S.E. 2d 387 (Va. 1994), those are actually the elements of a cause of action for fraud.   Virginia recognizes that "Concealment of a material fact, by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud."   Therefore, the elements of Fraudulent Concealment are as follows:  (a) Concealment (b) Of a material fact; (c) Intentionally; (d) By one who knows that the other party is acting upon the assumption that the fact does not exist; (e) Reliance by the party misled; and (f) Resulting damage to the party misled. As outlined below, the Complaint pleads each of the elements of Fraudulent Concealment:

(a)    Concealment. **Paragraph 112** alleges that Wilson Sonsini and Langen, along with other defendants, "knew of the Merger and transfer of assets but knowingly, willfully, intentionally and maliciously failed to inform G&G that the Merger and transfer of assets had taken place." **Paragraphs 74-81** describe specific actions and affirmative misrepresentations, which concealed the Merger and transfer of assets from G&G.

(b)    Of a Material Fact.  A materially false statement is one that paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit.  *Riggs National Bank v. Ross*, 180 B.R. 121 (Bankr. E.D. Va. 1994).  **Paragraphs 108-110** allege that the Merger, transfer of assets, and change in control of the Board of Directors were material facts that was never revealed to G&G. More specifically, **Paragraphs 74-81** show actions by Wilson Sonsini and Langen, which concealed pertinent information regarding LoveSac, the revelation of which would have led to G&G's discovery of the material facts.

(c)    Intentionally.  This element is satisfied by an allegation that the concealment was willful and intended to lull Plaintiff into inaction. *Guy v. Tidewater Investment Properties*, 41 Va. Cir. 218, 222 (1996).  **Paragraph 112** states that Wilson Sonsini knowingly, willfully and intentionally failed to inform G&G of the Merger and transfer of assets. **Paragraph 115** alleges that Defendants failed to inform G&G of the Merger in order to induce G&G to forbear from perfecting its security interest in Delaware in a timely fashion. Similarly, **Paragraph 116** avers that Defendants knew that the collateral provided for the loan had been reduced in value but knowingly and intentionally failed to notify G&G.

(d)    By one who knows that the other party is acting upon the assumption that the fact does not exist. **Paragraph 113** alleges that Wilson Sonsini, Langen and other Defendants knew that G&G was unaware of the Merger and transfer of assets and that G&G, by agreeing to the Loan Amendment and by failing to perfect its interest in Delaware, was acting on the assumption that its collateral was protected and remained in the possession of LoveSac Utah.

(e)    Reliance by the party misled.  **Paragraph 114** alleges that G&G failed to re-perfect its security interest in Delaware "in reliance on its belief that LoveSac Utah was an

ongoing concern."   While Wilson Sonsini and Langen argue that the Amended Complaint fails

to show that G&G reasonably relied on the misrepresentations of Wilson Sonsini and Langen,

the law in Virginia is that a finding of fraud requires evidence that "one has represented as true

what is really false, in such a way as to induce a reasonable person to believe it." *Evaluation*

*Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994).

(f)    Resulting damage to the party misled.  In addition to the failure to re-perfect the

security interest alleged in **Paragraph 114, Paragraph 120** states that G&G was unable to

recover the amount loaned to LoveSac.   **Paragraph 121** specifies the monetary damages

incurred by G&G as a result of the fraudulent concealment.

Although the Amended Complaint plainly states a cause of action for Fraudulent

Concealment under Virginia law, Wilson Sonsini and Langen for dismissal on the ground that the

Amended Complaint fails to adequately allege a duty to disclose running from Wilson Sonsini or

Langen to G&G.  However, **Paragraph 119** alleges that Wilson Sonsini and Langen owed a duty of

disclosure to G&G because they issued assurances to G&G regarding the status of G&G's stock and

collateral knowing that G&G would rely on those assurances.

"Virginia case law is limited on the issue of attorney liability to a third party,"

*Lynchburg Communications Systems v. Ohio State Cellular Phone Company*, 61 Va. Cir. 82, 84

(2003).  The Virginia Supreme Court has stated that "*absent special circumstances*, it generally

is held an attorney can be held liable for consequences of professional negligence only to a

client." *Ayyildiz v. Kidd*, 266 S.E.2d 108, 112 (1980) (emphasis added).  Subsequent Virginia

case law describes the type of "special circumstances," which may lead to liability to third

parties. In *Lynchburg Communications*,  for example, the Court held that in order to establish

fraud against an adversary's attorney, a plaintiff had to show that the attorney did more than

"paper the deal." *Lynchburg Communications Systems v. Ohio State Cellular Phone Company*, 61 Va. Cir. at 85. In that case, the Court sustained a demurrer to a fraud allegation because plaintiffs did not plead facts supporting the allegation that the attorney intentionally and knowingly made a false statement or concealed a material fact. Here, the Amended Complaint, as discussed in detail above, clearly alleges that Wilson Sonsini and Langen intentionally and knowingly concealed material facts from G&G.

Furthermore, a duty to disclose may arise, *inter alia*, if one party takes actions which divert the other party from making prudent investigations. *Bank of Montreal v. Signet Bank*, 193 F.3d at 829. In this case, **Paragraph 80** of the Amended Complaint alleges affirmative representations by Wilson Sonsini and Langen that G&G's stock was still valid and outstanding. Therefore, any duty to disclose the Merger arose, as a matter of law, when Wilson Sonsini and Langen, knowing of the Merger, represented that the stock in the Utah corporation was still valid and outstanding. Finally, a duty not to defraud is owed by everyone to everyone, regardless of any special relationship between the alleged tortfeasor and victim. *Hewlette v. Hovis,* 318 F. Supp. 2d 332, 337 (E.D. Va. 2004).

In addition, Wilson Sonsini and Langen contend that G&G's reliance on their representations was unreasonable in light of the fact that the Merger Certificate was on file with the Secretary of State. However, "one cannot, by fraud and deceit, induce another party to [act] to his disadvantage, then escape liability by saying that the party to whom the misrepresentation was made was negligent in failing to learn the truth." *Hitachi Credit v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999).

### 2.    Utah Law

In order to establish Fraudulent Concealment in Utah, a plaintiff must prove that (1) the non-disclosed information is material, (2) the non-disclosed information is known to the party

failing to disclose, and (3) there is a legal duty to communicate. *Smith v. Frandsen*, 94 P.3d 919, 923 (Utah 2004). In this case, **Paragraphs 108, 109, 110, and 116** allege that the Merger, and transfer of assets, change in control of the Board of Directors, and reduced value of the collateral, was non-disclosed information. The Amended Complaint then alleges each of the requirements of a cause of action for Fraudulent Concealment:

(1)  Materiality. **Paragraphs 108 and 109** specifically state that the Merger and Transfer of Assets were material facts. **Paragraphs 113 and 114** show materiality by alleging that because of the lack of information, G&G failed to perfect its security interest in Delaware.

(2)  Knowledge. **Paragraph 112** alleges that Wilson Sonsini and Langen knew of the Merger.

(3)  Duty to Speak. The question of whether a duty to speak exists is determinable by reference to all the circumstances of the case. If those circumstances include a relation of trust or confidence, or inequality of condition, a duty may exist. A duty to speak will be found from all the circumstances of the case and by comparing the facts not disclosed with the object and end in view of the contracting parties. *DeBry v. Valley Mortgage*, 835 P.2d 1000, 1007-8 (Utah 1992). Here, the Amended Complaint alleges that there was an unequal relationship among the parties. **Paragraph 113** alleges that Defendants all knew that that G&G was acting on the assumption that its collateral was protected and **Paragraph 116** states that Defendants all knew that the collateral provided as security for G&G's loan had been reduced in value. **Paragraph 112** alleges that Wilson Sonsini and Langen knew of the Merger and transfer of assets and **Paragraph 113** states that Defendants all knew that G&G was unaware of the Merger and transfer of assets. Thus, the Amended Complaint has established a relationship of inequality, which should, under the circumstances of this case, give rise to a duty to speak.

### 3.    The Complaint Pleads Fraudulent Concealment With the Requisite Particularity.

Wilson Sonsini and Langen charge that the Amended Complaint fails to plead Fraudulent Concealment with the particularity required by Fed. R. Civ. P. 9(b). particularity. As shown in detail above, the Amended Complaint pleads each of the elements of Fraudulent Concealment. In addition, a Complaint for fraud must meet the "minimum requirements of time, place, content, and identity of authorship." *Goldstein v. Malcolm G. Fries*, 72 F. Supp. 2d 620, 627 (E.D. Va. 1999). The Complaint meets this requirement as well: **Paragraph 74** alleges that on November 9, 2004, Langen, via email, sent various documents related to LoveSac to counsel for G&G. **Paragraph 75** alleges that none of the documents indicated that there had been a Merger or transfer of assets. **Paragraph 76** alleges that the documents Langen provided were false. **Paragraph 77** alleges that on November 14, 2005, Langen sent an e-mail to counsel for G&G and attached a "Common Stock Ledger," which referred to "the LoveSac Corporation" and provided that "G&G continued to hold its stock interests as previously represented. In addition, **Paragraph 80** alleges that on November 15, 2005, Langen sent an e-mail to counsel for G&G in which she informed G&G that "the stock certificates you are currently holding have not been cancelled and remain issued and outstanding and Lovesac's records have noted these certificates are pledged to G&G."

From the above it is clear that the Amended Complaint more than adequately fulfills the requirement of particularity, which under Virginia law requires identifying the agents, officers or employee that allegedly perpetrated the fraud as well as the time and place of the alleged fraudulent acts. *See Hamlett v. Virginia Vascular Associates*, 61 Va. Cir. 468, 471 (2003).

In addition, the Complaint pleads fraud with the requisite particularity under Utah law. In Utah, a complaint, which states the time, place, and content of an allegedly fraudulent misrepresentation, is sufficient. *Hafen v. Strebeck*, 338 F. Supp. 2d 1257, 1264 (D. Utah 2004). To

the extent that there is other contact between the parties, that conduct need not be pleaded with particularity unless it contains additional fraudulent representations. *Id.* Therefore, the allegations of the Amended Complaint, stating the date on which fraudulent e-mails were sent by Langen, along with the content of those emails, plead fraud with the particularity required by Fed. R. Civ. P. 9(b).

### D.    The Complaint States a Cause of Action for Negligent Misrepresentation under Utah and California Law.

In Virginia, Negligent Misrepresentation is not a separate cause of action but is, rather, the essence of a claim for Constructive Fraud. Therefore, Count VII – Negligent Misrepresentation - is governed by either Utah or California Law.

### 1.    Utah Law.

Negligent misrepresentation is established in Utah by showing (1) a false or misleading statement, (2) failure to exercise reasonable care, (3) materiality, (4) that the party making the statement was in a superior position to know the material facts, (5) expectation that the other party would reasonably rely on the misrepresentation, (6) reasonable reliance, and (7) resultant damages. *Utah Foam Products v. Upjohn,* 950 F. Supp. 513, 522 (D. Utah 1996). In this case, G&G has alleged each of the elements, as follows:[3]

(1)    False or Misleading Statements. The Amended Complaint alleges numerous instances of false and misleading statements by Wilson Sonsini and Langen:

- **Paragraph 147** states that none of the documents Langen provided to G&G indicated that there had been a Merger or a transfer of assets from LoveSac Utah.

- **Paragraph 148** alleges that documents provided to G&G were false and did not contain financial information and stock ownership related to LoveSac Utah.

---

[3] Outside the context of fraud, Fed. R. Civ. P. 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief. *See In re Suprema Specialties*, 438 F.3d 256, 270 (3d Cir. 2006).

- **Paragraph 142** alleges that documents prepared by Wilson Sonsini and Langen and forwarded to G&G misrepresented that LoveSac Utah was an ongoing concern after February 2005.

- **Paragraph 78** states that Wilson Sonsini reviewed and edited the Loan Amendment, which had been prepared by G&G's counsel but failed to inform G&G that the Loan Amendment erroneously referred to the LoveSac as a Utah corporation.

- **Paragraph 79** alleges that Langen, who revised the Loan Amendment did not change the name of the borrower from LoveSac Utah to LoveSac Delaware and did not otherwise advise G&G that LoveSac Utah had participated in a Merger and transfer of assets.

- **Paragraph 142** states that documents prepared by Wilson Sonsini and Langen carelessly or negligently represented that LoveSac Utah was an ongoing concern after February 2005.

- **Paragraph 145** states that that in an e-mail dated November 15, 2005, Langen negligently misrepresented to G&G, that "the stock certificates you are currently holding have not been cancelled and remain issued and outstanding."

- **Paragraph 147** alleges that none of the provided by Langen on Novermber 9, 2005, indicated that there had been a Merger.

- The falsity of the above representations is further alleged in **Paragraphs 140 and 141**, which state that Wilson Sonsini and Langen handled the refinancing of the Note and were in a position to know material facts regarding LoveSac Utah's finances and structure. In addition, **Paragraph 129**, which alleges that Wilson Sonsini and Langen knew that over 83% of G&G's stock had been pledged to other parties.

(2)    Failure to exercise reasonable care.  In this regard, it can properly be inferred that Wilson Sonsini, knowing of the Merger, and the issuance of 83% of LoveSac Delaware's stock to other defendants, failed to exercise reasonable care when it told G&G that its shares had not been cancelled and remained issued and outstanding. In addition, **Paragraphs 142, 145 and 149** allege that the various misrepresentations were made without reasonable grounds for believing they were true.   It should also be noted that it is inappropriate to make reasonableness determinations at the motion to dismiss stage of the proceedings. *Hafen v. Strebeck*, 338 F. Supp. 2d 1257, 1265 (D. Utah 2004).

(3)    Materiality.  The allegation of **Paragraph 152,** that G&G did not perfect its security interest in justifiable reliance on the misrepresentations of Wilson Sonsini, adequately alleges the materiality of the misrepresentations.

(4)    The party making the statement was in a superior position to know the material facts. **Paragraph 141** specifically states that as a result of their representation of LoveSac Utah and/or LoveSac Delaware, pertaining to the refinancing of G&G's  Note, Wilson and Langen were in a superior position to know material facts regarding LoveSac's finances and structure.

(5)    Expectation that G&G would rely on the misrepresentation.  **Paragraph 150** alleges that Wilson Sonsini and Langen knew or should have known that G&G would rely on the false representations and **Paragraph 151** alleges that the misrepresentations were made with the intent that G&G would rely upon them.

(6)    Reasonable reliance by G&G.  **Paragraph 152** alleges that in justifiable reliance on the misrepresentations of Wilson Sonsini and Langen,  G&G did not perfect its interest in the assets of LoveSac Delaware.  Wilson Sonsini and Langen argue that the Amended Complaint fails because it does not allege facts to support the allegation of justifiable reliance.  However, the fact

that Wilson Sonsini and Langen were the attorneys who represented LoveSac in connection with the refinancing (**Paragraphs 139 and 140**) certainly warranted G&G's reliance on their representations regarding the corporate status of LoveSac and the validity of G&G's stock and other collateral. Furthermore, the Court is not in a position to judge the quality of G&G's reliance inasmuch as reasonable reliance is generally a question for the jury. *Robinson v. Tripco*, 2000 Ut. App. 200 (2000). Additionally, in considering a Motion to Dismiss, the Court must accept as true the Plaintiff's allegations.

(7)    Injury and Damages. **Paragraph 152** alleges that G&G did not perfect its security interest in Delaware and has been unable to recover the money it loaned to LoveSac Utah. **Paragraph 153** alleges the monetary damages incurred as a direct and proximate result of Wilson Sonsini's negligent misrepresentations.

## 2.    California Law

Under California law, the elements of negligent misrepresentation are (1) misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage. *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1128 (N.D. Cal. 2001). Again, the Complaint alleges each of these elements.

(1)    Misrepresentation of a past or existing material fact. **Paragraph 142** alleges that on documents prepared by Wilson Sonsini and Langen and forward to G&G, carelessly or negligently misrepresented that LoveSac Utah was an ongoing concern after February 2005. **Paragraph 145** states that in an e-mail dated November 15, 2005, Langen negligently misrepresented to G&G, that "the stock certificates you are currently holding have not been

cancelled and remain issued and outstanding." **Paragraphs 146-149** allege that Wilson Sonsini and Langen forwarded false and/or misleading documents to G&G.

(2)      Without reasonable ground for believing it to be true. **Paragraph 144** alleges that Wilson Sonsini and Langen knew that over 83% of the stock in LoveSac Delaware had been issued to the other defendants so that there were no grounds, reasonable or otherwise, for the representation that G&G's shares in LoveSac Utah (a corporation whose existence had merged into that of LoveSac Delaware) "have not been cancelled and remain issued and outstanding." **Paragraphs 146 through 149** allege that the various misrepresentations and omissions contained in documents prepared by Wilson Sonsini and Langen as well as the misrepresentations contained in Langen's e-mails were made without reasonable grounds for believing that they were true.

(3)      With intent to induce another's reliance on the misrepresentation. **Paragraph 151** alleges that Wilson Sonsini and Langen provided false information to G&G with the intent that G&G would rely upon them to extend the Note and enter into the Loan Amendment. **Paragraph 115** alleges that Defendants (including Wilson Sonsini and Langen) failed to inform G&G of the Merger and transfer of assets in order to induce G&G to forbear from perfecting its security interest in Delaware in a timely fashion.

(4)      Ignorance of the truth and justifiable reliance on the misrepresentation. **Paragraph 50** states that G&G did not learn of the Merger until the filing of LoveSac Delaware's bankruptcy petition in 2006. **Paragraph 152** states that in justifiable and reasonable reliance on the misrepresentations of Wilson Sonsini and Langen, G&G did not perfect its interest in the assets of LoveSac Delaware and is unable to recover the money loaned to LoveSac Utah.

(5)     Resulting damage.  **Paragraph 153** alleges that as a direct and proximate result of the misrepresentations G&G has suffered damages in the amount of at least $3,259,842.47.

Therefore, Plaintiff has pleaded each of the elements of negligent misrepresentation under both Utah and California law.

### E.     Constructive Fraud

As discussed above, the fraud counts of the Amended Complaint are governed by Virginia Law pursuant to Delaware Choice of Law Principles. The elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently and the injured party was damaged as a result of his reliance upon the misrepresentation.  Additionally, a finding of constructive fraud requires clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation. *State Farm v. Remley*, 618 S.E.2d 316, 220 (Va. 2005).

In this case, the element of false representation is clearly addressed in the Amended Complaint, which plainly alleges that Wilson Sonsini and Langen misrepresented that LoveSac Utah was an ongoing concern after February, 2005 (**Paragraph 158**); that G&G's shares of LoveSac Utah were valid in November, 2005 (**Paragraph 161**); and provided G&G with false and misleading documents (**Paragraphs 163, 164, 165**).

The element of materiality is alleged in **Paragraph 159** and is evident from the allegation of **Paragraph 168**, that in reliance on those facts, G&G failed to perfect its interest in the assets of LoveSac Delaware. G&G's injuries and damages are expressly stated in **Paragraphs 168 and 169**. Finally, the Amended Complaint establishes that the representations made by Wilson Sonsini and Langen pertaining, *inter alia*, to the status of LoveSac and G&G's shares, were false and that G&G reasonably relied on the false statements of LoveSac's attorneys.  Finally, the Amended Complaint

satisfies the final element by alleging that Wilson Sonsini and Langen made the false representation with the intent that G&G would rely upon them and extend the Note to LoveSac and enter into the Loan Amendment (**Paragraph 167**). Therefore, each element of Constructive Fraud has been alleged and will be established by clear and convincing evidence at trial.

**F.    Negligent Supervision.**

Because Wilson Sonsini is a California entity and because Langen worked in both California and Utah, and was only authorized to practice in California, the Negligent Supervision Count is governed by either California or Utah Law.

**1.    California Law.**

Pursuant to *Delfino v. Agilent Technologies*, 2006 Cal. App. LEXIS 1937, a person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless. Negligence can be established by showing duty, breach of duty and causation and liability for negligent supervision/retention of an employee is one of direct liability for negligence, not vicarious liability. Furthermore, an employee's actions may be ratified after the fact by the employer's voluntary election to adopt the employee's conduct by, in essence, treating the conduct as its own. The failure to discharge an employee after knowledge of his or her wrongful acts may be evidence supporting ratification. *Id.*

The elements of negligent supervision are (1) the employer had a duty to supervise, (2) the employer negligently supervised, and (3) the negligence proximately caused the plaintiff's injuries. *Ofoma v. Armour*, 1998 U.S. Dist. LEXIS 11052 (D. Ill.).

With regard to duty, an attorney may owe a duty to a third person, and may be liable if the third person who was intended to be benefited by his performance is injured by his negligent execution of that duty. *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*, 57 Cal. App. 3d 104, 110 (1976). *Roberts* involved a law firm's issuance of an opinion to a potential creditor regarding the

27

status of a corporate client. In determining that the law firm was liable to the creditor for negligent misrepresentation, the court held that "the issuance of a legal opinion intended to secure benefit for the client, either monetary or otherwise, must be issued with due care, or the attorneys who do not act carefully will have breached a duty owed to those they attempted or expected to influence on behalf of their clients." *Id.*

In addition, California courts recognize the general principle that "where one speaks he must speak the whole truth to the end that he does not conceal any fact which materially qualify those stated." *Pavicich v. Santiucci*, 85 Cal. App. 4th 382, 398 (2000). This general principle must certainly apply to an attorney who misrepresents facts to a party she knows is relying on her advice. Therefore, Wilson Sonsini and Langen owed a duty to G&G.

As outlined below, the Amended Complaint fully pleads Negligent Supervision, so as to withstand the Motion to Dismiss filed by Wilson Sonsini. **Paragraph 171** alleges that Langen is an attorney employed by Wilson Sonsini; **Paragraph 174** alleges that Wilson Sonsini had a duty to supervise Langen; **Paragraph 175** alleges that Wilson Sonsini owed a duty to G&G, whom it knew would rely on the representations of its employees. Pararaph 177 states that as a pledge of stock, G&G was an intended beneficiary of the relationship between Wilson Sonsini and the Investor Defendants and/or LoveSac. The breach of duty is alleged in **Paragraph 178**, which states that Wilson Sonsini allowed Langen to communicate inaccurate information and by failing to correct the false representations. **Paragraph 179** alleges that the injury sustained by G&G as a direct and proximate result of Wilson Sonsini's negligence; and **Paragraph 180** states the damages incurred by G&G.

### 2.    Utah Law.

Under Utah law, Count IX (Negligent Supervision), also withstands the Motion to Dismiss. As stated in the Motion, a plaintiff is required to show that the defendant owed the

plaintiff a duty, that defendant breached the duty, that the breach was a proximate cause of the plaintiff's injuries, and that there was in fact an injury. The Complaint pleads each of those elements, as follows:

Defendant owed Plaintiff a Duty. **Paragraph 171** alleges that Langen is an attorney employed by Wilson Sonsini. In this regard, Wilson Sonsini properly cites Jackson v. Righter, 891 P.2d 1387 (Utah 1995), for the proposition that "a duty may arise when an employer could reasonably be expected, consistent with the practical realities of an employer-employee relationship, to appreciate the threat to a plaintiff of its employee's actions." *Id.* at 1392. Certainly, a law firm can be expected to appreciate the consequences of the communication of misinformation by its associates regarding the legal and factual status of stock in a client corporation.

Wilson Sonsini attempts to avoid this obvious conclusion by stating that the Amended Complaint fails because it does not allege that Wilson Sonsini could reasonably be expected to foresee the threat of injury from Ms. Langen's communication of misinformation to the Plaintiff (Wilson Sonsini Brief, p. 34). However, as stated above, it is inappropriate to rule on reasonableness determinations at the motion to dismiss stage. *Hafen v. Strebeck*, 338 F. Supp. 2d 1257, 1264 (Utah 2000).

Defendant breached its duty. The breach of duty is alleged in **Paragraph 145**, which states that Wilson Sonsini failed to review the content of Langen's communications with G&G and by allowing her to communicate inaccurate information. The breach was a proximate cause of the plaintiff's injuries. **Paragraph 179** alleges the injuries sustained by G&G as a direct and proximate result of the negligence of Wilson Sonsini and Langen.

Plaintiff incurred injury. **Paragraph 179** alleges that due to Wilson Sonsini's negligent supervision, G&G did not perfect its interest in the assets of LoveSac Delaware and was unable to recover the money loaned to LoveSac Utah and **Paragraph 180**states the amount of damages incurred by G&G.

Therefore, Plaintiff has alleged each of the elements of Negligence Supervision, which are required to withstand the Motion to Dismiss Count IX (Negligent Supervision).

### G.    Negligence.

#### 1.    California Law.

Under California law, the elements of a negligence cause of action are (1) the existence of a legal duty of care; (2) breach of that duty; and (3) the breach as the proximate cause of the resulting injury. *Baptist v. Robinson*, 2006 Cal. App. LEXIS 1454. With regard to duty, an attorney may owe a duty to a third person, and may be liable if the third person who was intended to be benefited by his performance is injured by his negligent execution of that duty. *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*, 57 Cal. App. 3d at 110.

The *Roberts* case is pertinent here in that it involved a law firm's issuance of an opinion to a potential creditor regarding the status of a corporate client. In determining that the law firm was liable to the creditor for negligent misrepresentation, the court held that "the issuance of a legal opinion intended to secure benefit for the client, either monetary or otherwise, must be issued with due care, or the attorneys who do not act carefully will have breached a duty owed to those they attempted or expected to influence on behalf of their clients." *Id*. In this case, Wilson Sonsini and Langen reviewed drafts of the Loan Amendment and did not change the name of the borrower or the state of incorporation. They then issued a legal opinion, in an e-mail, which stated that G&G's shares were valid and outstanding. Those acts and failures to act were plainly intended to secure a benefit for LoveSac—the extension of further financing to an insolvent corporation.

The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, including:

(1)    The extent to which the transaction was intended to affect the plaintiff,

(2)    The foreseeability of harm to the plaintiff,

(3)    The degree of certainty that the plaintiff suffered injury,

(4)    The closeness of the connection between the defendant's conduct and the injury suffered,

(5)    The moral blame attached to the defendant's conduct, and

(6)    The policy of preventing future harm.

*Keru Investments v. Cube Company*, 63 Cal. App. 4th 1412, 1417 (1998).

Here, (1) all parties, including G&G, LoveSac, Wilson Sonsini and Langen fully expected that the refinancing of the loan would affect G&G; (2) it was entirely foreseeable that the transmission of inaccurate information would affect G&G to its detriment; (3) G&G was harmed by the inaccurate information transmitted; (4) transmission of the inaccurate information was closely related to G&G's failure to perfect its security interest; (5) the transmission of inaccurate information and persistent failure to correct the inaccuracies is morally repugnant; (6) the courts have a strong policy of protecting the general integrity of the legal profession.

Under these circumstances, California courts would find that Wilson Sonsini and Langen owed a duty to G&G. Furthermore, under California law, an attorney is required to make a "reasonable effort" to verify facts on which an opinion is based. *FDIC v. O'Melveny & Myers*, 969 F.2d 744 (9th Cir.) *rev'd on other grounds*, 512 U.S. 79 (1994). As discussed above regarding Negligent Misrepresentation and Negligent Supervision, the Amended Complaint more than adequately pleads breach of duty, proximate cause and injury, so that all of the elements of Negligence have been satisfied.

### 2.    Utah Law

Wilson Sonsini and Langen  contend that the Amended Complaint fails to state a claim for Negligence under Utah law because Wilson Sonsini and Langen owed no duty to G&G.    It is true that to state a claim for negligence in Utah, a defendant must owe a duty to the plaintiff.  However, the determination of whether a duty exists is not as clear-cut as Wilson Sonsini and Langen imply. In fact, "[c]ourts consider many factors, none of which is dispositive, in determining when a duty runs between parties." *Hafen v. Strebeck*, 338 F. Supp. 2d at 1265.  In *Hafen*, the Court determined that Utah courts would adopt the approach of the Eighth Circuit, which had relied in part on an Oregon case holding that professionals such as attorneys, engineers, architects, real estate brokers and primary insurers owe a duty for purposes of negligent misrepresentation[4] and an Illinois case limiting actions for negligent misrepresentation to situations where "one who is in the business of supplying information for the guidance of others in their business transactions makes negligent misrepresentations.[5]

Utah courts have also addressed the question of when a duty to speak arises in a particular case.  This is particularly relevant here because the Count X of the Amended Complaint specifically alleges that Wilson Sonsini and Langen "failed to inform G&G of the Merger or the transfer of assets from LoveSac Utah to LoveSac Delaware." (**Paragraph 186**).  As in the case of duty generally, "the question of whether a duty to speak exists is determinable by reference to all the circumstances of the case" and " a duty to speak will be found from all the circumstances of the case and by comparing the facts not disclosed with the object and end in view."  *Debry v. Valley Mortgage Co.*, 835 P.2d 1000, 1007 (Utah 1992).

---

[4] *Onita Pac. Corp. v. Trustees of Bron*son, 843 P.2d 890, 896-97 (Ore. 1992).
[5] *Moorman Mfg. v. National Tank*, 435 N.W. 2d 443, 452 (1982).

While it is true that Utah has not imposed a blanket duty on attorneys with respect to non-clients, in *Winters v. Shulman*, the case cited by Wilson Sonsini and Langen, the Court of Appeals specifically noted that an attorney could be liable for negligence to someone other than a client under "special circumstances." 977 P.2d 1218 (Utah 1999).[6]  The Utah Supreme Court has also recognized that an attorney can be liable for negligence to one other than a client, under a theory of third-party liability. *Atkinson v. IHC Hospitals, Inc.*, 798 P.2d 733 (Utah 1990).  In *Atkinson*, the Court noted cases from other jurisdictions, which involved, *inter alia*, drafting and administering wills and estates, fraudulent misrepresentation, creditors of a corporation in receivership, and giving a legal opinion on a bond.  In *Atkinson*, the Court ruled that the third-party liability theory was inapposite to the factual context of the case[7] but did not discount the general theory of attorney liability to a non-client.

Utah courts have also imposed a duty on other professionals with regard to their dealings with parties with whom they are not in privity.  Most recently, the Court of Appeals held that real estate appraisers "have an independent duty of care to persons with whom they have no contractual relationship," just as real estate professionals owe a duty to buyers, whom they do not represent. *West v. Inter-Financial, Inc.*, 139 P.3d 1059 (Utah 2006).  In *West*, the Court quoted the Restatement (Second) of Torts § 522:

> One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

---

[6] The Court concluded that there was no duty in that case because, unlike in this case, the client of the attorney-defendant was a direct adversary of the plaintiff. *Winters v. Shulman*, at 1225.

[7] *Atkinson* involved advice allegedly given to malpractice plaintiffs by an attorney representing the defendant.

Here, the Amended Complaint pleads that Wilson Sonsini and Langen were acting in the course of their profession, in a transaction in which they had a pecuniary interest, and failed to exercise reasonable care or competence in communicating false information for the guidance of G&G. Wilson Sonsini and Langen are, therefore, liable to G&G for the pecuniary loss caused by their justifiable reliance on the misinformation.

**H.    Respondeat Superior/Vicarious Liability.**

Although the Motion asserts that G&G has failed to plead sufficient facts to entitle it to any relief under the doctrine of respondeat superior, the Motion actually argues that the respondeat superior count must be dismissed because the Amended Complaint fails to state a claim for an underlying tort in the scope of Langen's employment. However, as discussed throughout this brief, G&G has sufficiently plead the torts of fraudulent concealment, negligent misrepresentation, constructive fraud and negligence against Ms. Langen. As shown, below, the other elements of respondeat superior are more than adequately alleged under either California or Utah law so that the Motion to Dismiss Count XI must be denied.

**1.    California Law.**

Pursuant to Cal. Civ. Code § 2338, the doctrine of respondeat superior imposes vicarious liability on an employer for the torts of an employee acting within the scope of his or her employment, whether or not the employer is negligent or has control over the employee. *Baptist v. Robinson*, 2006 Cal. App. LEXIS 1454 at * 13-14. Here, the Amended Complaint states a claim for Respondeat Superior by alleging that Langen was an employee of Wilson Sonsini (**Paragraph 171**) and was acting within the scope of her employment in her communications with G&G (**Paragraphs 191 through 196**). As shown in detail above, the Amended Complaint sufficiently alleges that Langen committed the torts of Fraudulent Concealment, Negligent

Misrepresentation, Constructive Fraud and Negligence.  Hence, the Motion to Dismiss Count XI must be denied.

### 2.    Utah Law.

In Utah, employers are held vicariously liable, under the theory of respondeat superior, for the torts their employees commit when the employees are acting within the scope of their employment.  *Clover v. Snowbird Ski Resort,* 808 P.2d 1037 (Utah 1991).  Here, the Amended Complaint states a claim for Respondeat Superior by alleging that Langen was an employee of Wilson Sonsini  **(Paragraph 171)** and was acting within the scope of her employment in her communications with G&G  **(Paragraphs 191 through 196)**.  As shown in detail above, the Amended Complaint sufficiently that Langen committed the torts of Fraudulent Concealment, Negligent Misrepresentation and Negligence.  Hence, the Motion to Dismiss Count XI must be denied.

## CONCLUSION

As set out above, the Amended Complaint adequately states claims against Defendant Wilson Sonsini and Langen for Fraudulent Concealment, Negligent Misrepresentation, Constructive Fraud and Negligence and against Wilson Sonsini for Negligent Supervision and Respondeat Superior/ Vicarious Liability. Accordingly, the Motion to Dismiss should be denied in its entirety.

Respectfully Submitted,

ZUCKERMAN SPAEDER LLP

/s/ Virginia Whitehill Guldi
Thomas G. Macauley ( No. 3411)
Virginia Whitehill Guldi ( No 2792)
919 Market Street, Suite 990
P.O. Box 1028
Wilmington, DE 19899
(302) 427-0400

STINSON MORRISON HECKER LLP

Marc E. Albert
Janet M. Nesse
Lawrence P. Block
Katherine M. Sutcliffe Becker
1150 18th Street NW, Ste. 800
Washington, DC 20036-3816
(202) 785-9100

Attorneys for G&G, LLC

October 26, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2007, a copy of the foregoing ANSWERING BRIEF OF PLAINTIFF G&G, LLC IN OPPOSITION TO DEFENDANTS WILSON, SONSINI, GOODRICH & ROSATI, P.C. AND LILY WONG LANGEN'S MOTION TO DISMISS G&G, LLC'S COMPLAINT, and Appendix was served via postage paid, first-class mail, on the following:

Michael A. Weidinger
Joseph S. Naylor
Morris, James LLP
500 Delaware Ave., Suite 1500
Wilmington, DE 19801

Michael L. Scheier
Joseph L. Bruemmer
Keating Muething & Klekamp PLL
One East Fourth St., Suite 400
Cincinnati, Ohio 45202

Derek C. Abbott
Ian Roberts McConnel
Morris, Nichols, Arsht & Tunnell
1201 North Market St.
P.O. Box 1347
Wilmington, DE 19899

/s/ Virginia Whitehill Guldi
Virginia Whitehill Guldi