UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| G&G, LLC, | ) |
| | ) |
| Plaintiff, | ) Case No. 07-440 (SLR) |
| | ) |
| -v- | ) |
| | ) |
| James L. Hyde, et al., | ) |
| | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF MOTION OF DEFENDANTS WALNUT INVESTMENT PARTNERS, LP, WALNUT PRIVATE EQUITY FUND, LP, THE WALNUT GROUP, BRAND EQUITY VENTURES II, LP, MILLEVERE HOLDINGS LIMITED, DAVID YARNELL, JAMES GOULD, SIMON WRIGHT, AND WALT SPOKOWSKI TO DISMISS OR STAY AMENDED COMPLAINT OF G&G, L.L.C. PURSUANT TO THE FIRST-TO-FILE DOCTRINE**

Michael A. Weidinger (I.D. No. 3330)
Joseph S. Naylor (I.D. No. 3886)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Tel: (302) 888-6800
Fax: (302) 571-1750
mweidinger@morrisjames.com
jnaylor@morrisjames.com

Michael L. Scheier (0055512)
Joseph L. Bruemmer (0079120)
KEATING MUETHING & KLEKAMP PLL
One East Fourth St., Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6952
Fax: (513) 579-6457
mscheier@kmklaw.com
jbruemmer@kmklaw.com

*Attorneys for Defendants, Brand Equity Ventures II, LP, Walnut Investment Partners, LP, Walnut Private Equity Fund, LP, The Walnut Group, Millevere Holdings Limited, David Yarnell, James Gould, Simon Wright, & Walt Spokowski*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. LAW AND ARGUMENT......................................................................................1

    A. The First-to-File Rule Requires Dismissal of the Delaware Litigation ...........................................................................1

        1. The Ohio Action, and Not G&G's Dismissed Adversary Proceeding in Bankruptcy Court, Was the First-Filed Suit. ..................................................................1

        2. G&G's Position that the First-to-File Rule Requires Identity of Parties in the Third Circuit is Wrong. ...........................4

        3. The Ohio Action Is Not Stalled and the Delaware Litigation Has Not Proceeded So Rapidly as to Justify a Departure from the First-to-File Rule. ..........................................7

    B. The Claims G&G Brings Against the Moving Defendants Here Are Compulsory Counterclaims that Should Be Brought in the Ohio Action...................................................................................8

    C. Alternatively, the Court Should Stay this Suit Pending the Outcome of the Ohio Action................................................................10

III. CONCLUSION....................................................................................................12

## TABLE OF AUTHORITIES

**Citation** — **Page**

*Benge v. United States*
    17 F.3d 1286 (10th Cir. 1994) .................................................................2

*Carter v. Texas Dep't of Health*
    119 Fed. Appx. 577 (5th Cir.2004) ..........................................................2

*EEOC v. University of Pennsylvania*
    850 F.2d 969 (3d Cir. 1988) ...............................................................5, 7, 9

*Genetech, Inc. v. Eli Lilly & Co.,*
    998 F.2d 931 (Fed. Cir. 1993)...................................................................9

*Guidant Corp. et al. v. St. Jude Medical, Inc.*
    Case No. 04-067-SLR, 2004 U.S. Dist.
    LEXIS 17218 (D. Del. Aug. 27, 2004) ....................................................1

*Handy v. Shaw, Bransford, Veilleuz, & Roth*
    325 F.3d 346 (D.C. Cir. 2003) ..................................................................3

*Morgan Distrib. Co. v. Unidynamic Corp.*
    868 F.2d 992 (8th Cir.1989) .....................................................................2

*Schiavone v. Fortune*
    477 U.S. 21 (1986) ....................................................................................2

*Time Warner Cable, Inc. v. GPNE Corp.*
    No. 07-67-MPT, 2007 U.S. Dist.
    LEXIS 52655 (D. Del. July 20, 2007) ..................................................4, 5

*Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership*
    882 F.Supp. 359 (D. Del. 1994) ...............................................................1

*United States. ex rel. Malloy v. Telephonics Corp.*
    68 Fed. Appx. 270 (3d Cir. 2003) .............................................................3

**Other Authorities**

Fed. R. Civ. P. 15(c) ..........................................................................................2, 3

I. **INTRODUCTION**

The Moving Defendants file this reply brief in response to G&G's opposition to our Motion to Dismiss pursuant to the "first to file" doctrine.[1] Although G&G raises a number of arguments to escape the doctrine and impose undue burden on the federal judiciary by maintaining that two separate lawsuits arising out of the very same facts should be prosecuted in two different federal courts, none are persuasive. Each of G&G's arguments is wrong as a matter of fact and law as we demonstrate below. Accordingly, the Court should dismiss or stay this action pending resolution of the first filed Ohio Action.[2]

II. **LAW AND ARGUMENT**

   A. **The First-to-File Rule Requires Dismissal of the Delaware Litigation.**

      1. The Ohio Action, and Not G&G's Dismissed Adversary Proceeding in Bankruptcy Court, Was the First-Filed Suit.

As discussed in our opening papers, WIP, WPEF, and BEV ("Ohio Plaintiffs") filed the Ohio Action against G&G on May 15, 2007. (*See* D.I. 29 at 3). Five days earlier, on May 10, 2007, the United States Bankruptcy Court for the District of Delaware dismissed an adversary proceeding brought by G&G against the defendants in this action

---

[1] Capitalized terms carry the same meaning as they did in our Opening Brief unless otherwise defined.

[2] G&G incorrectly contends that dismissal of a case is not an appropriate remedy in a case where the first to file rule applies, and that that the only proper action is to stay the second filed action. Wrong. A glance at the first-to-file rule cases within the District of Delaware demonstrates that courts use the first-to-file rule to dismiss the litigation, *Time Warner Cable, Inc.*, 497 F.Supp.2d 584, transfer the litigation, *Guidant Corp. et al. v. St. Jude Medical, Inc.*, Case No. 04-067-SLR, 2004 U.S. Dist. LEXIS 17218 (D. Del. Aug. 27, 2004), or stay the litigation, *Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership*, 882 F.Supp. 359 (D. Del. 1994).

for lack of subject matter jurisdiction. That proceeding was styled *G&G, LLC v. Nelson, et al.*, Adversary Proceeding No. 06-50786 (Sontchi, J.) (the "Adversary Proceeding"). On July 13, 2007, two months after the Ohio Plaintiffs filed the Ohio Action, G&G filed this case. (D.I. 1). At the time G&G filed this case, the only other action pending related to Lovesac Delaware was the Ohio Action.

In opposition to our Motion, G&G urges this Court to consider the dismissed Adversary Proceeding as the first-filed action for purposes of analyzing our Motion to Dismiss. (D.I. 40 at 6-7). Without citation to any authority, G&G seeks to relate the date of the filing of this lawsuit back to the date that G&G filed the Adversary Proceeding, July 25, 2006. (*Id.*). This position, however, ignores the vast and unanimous precedent holding that the "relation back" concept applies only to pleadings within the same case. G&G does not cite any case where the relation back concept, primarily grounded in Federal Rule 15(c), has been used to relate back the date of a subsequent lawsuit to a prior lawsuit. In fact, courts have rejected just such an effort. *E.g., Benge v. United States*, 17 F.3d 1286, 1288 (10th Cir. 1994) ("[A] separately filed claim, as opposed to an amendment or a supplementary pleading, does not relate back to a previously filed claim.").[3]

The Third Circuit too has held that the relation back doctrine is only applicable when a party is attempting to amend a pleading in a single suit; it has no application

---

[3] *See also Carter v. Texas Dep't of Health*, 119 Fed. Appx. 577, 581 (5th Cir.2004) (finding that Rule 15(c) pertains only to pleadings within the same case, and does not permit a complaint in one case to relate back to a complaint in another case or to a previously dismissed lawsuit); *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 994 (8th Cir.1989) ("Rule 15(c) concerns amendments to pleadings. Its plain language makes clear that it applies not to the filing of a new complaint, but to the filing of an amendment stating a claim that arose 'out of the conduct set forth in the original pleading.'" (*quoting Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)).

2

when, as here, a party attempts to relate a pending action back to a separately filed or previously dismissed one. *United States. ex rel. Malloy v. Telephonics Corp.*, 68 Fed. Appx. 270, 273 (3d Cir. 2003) ("[The] relation back theory applies to an amendment of a pleading in the same civil action.... Rule 15(c) does not permit a complaint filed in one civil action to relate back to a complaint filed in a separate civil action."). Other courts are in accord. *E.g. Handy v. Shaw, Bransford, Veilleuz, & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003) (holding that after state action was dismissed, the subsequently filed federal action became the first-filed suit, as it was filed before the second state action was filed); cases cited *supra* n. 3.

*Handy* is particularly instructive because it involved an effort by a party to relate a subsequent action back to a dismissed case, as G&G urges here. In *Handy,* a law firm filed suit against its client in Superior Court for unpaid legal fees. *Handy*, 325 F.3d at 348. Three days later, the client filed a malpractice suit against the law firm in federal court. *Id.* The law firm moved to dismiss the federal action based, in part, on the first-to-file rule. *Id.* at 348-49 & n.2. Although the federal court dismissed the client's case in favor of the first-filed Superior Court action, it was unaware that before its ruling, the law firm's Superior Court case had been dismissed for failure to effectuate service of process, and that the law firm, rather than appeal, filed a second Superior Court action. *Id.*

In discussing the lower court's first-filed analysis, the *Handy* Court noted that the dismissal of the law firm's initial Superior Court suit rendered the district court's first-filed analysis irrelevant. *Id.* at 349 n.2. The Court reasoned that "by the time the district court ruled on [the law firm's] motion to dismiss…, its original Superior Court case had been dismissed and [the client's] federal suit was then the first filed, that is it pre-dated

3

[the law firm's] *second* Superior Court action." *Id.* (emphasis in original). In other words, the *Handy* court rejected the proposition that the second Superior Court action could "relate back" to the first, now dismissed, Superior Court action for purposes of a first-to-file analysis.

*Handy* is on all fours with this case. Just as the law firm in that case argued that its second Superior Court action was the first filed because it related back to its initial Superior Court suit, G&G argues that the Delaware Action is the first-filed action because it allegedly relates back to the Adversary Proceeding, which pre-dated the Ohio Action. (D.I. 40 at 6-7). The Court, like the *Handy* court, should reject this position. In fact, the conclusion that the Ohio Action is the first-filed action is even stronger here than it was in *Handy*. In *Handy*, the first-filed lawsuit was actually pending at the time the second suit (the federal court action) was filed, while here, there was *no* action pending at the time the Ohio Action was initiated. The Ohio Action was filed *after* the Bankruptcy Court dismissed the Adversary Proceeding. Accordingly, the Ohio Action constitutes the first-filed action, and the Delaware Action should be dismissed.

    2.  G&G's Position that the First to File Rule Requires
       Identity of Parties in the Third Circuit Is Wrong.

In our Opening Brief, we cited this Court to its recent decision in *Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584 (D. Del. 2007). That case squarely addressed the issue before the Court on our Motion, and held that the first filed rule applies even if the two actions do not have complete identity of parties and issues. *Id.* at 588-90. The analysis turns, instead, on whether the two cases share the same set of facts. *Id.* at 589.

G&G's effort to distinguish *Time Warner* is not persuasive. First, G&G argues that the number of different defendants in the two suits is somehow relevant. (D.I. 40 at 9). Second, G&G argues that the two cases in *Time Warner* involved the same patent, but the Ohio and Delaware litigation concern "entirely different subjects and facts." (*Id.*).

As to G&G's first point, there is no indication in *Time Warner,* or any other case for that matter, that the number of different defendants is a material consideration. Nor should it logically be one. To impose such a rule raises thorny questions such as at what point exactly are there "too many" different defendants between the suits, and whether additional defendants were named in the second suit for the improper purpose of defeating the first-to-file rule. But in any event, as the court noted just five months ago, the first-to-file rule does not "specifically require the exact identify of parties." *Time Warner*, 497 F. Supp. 2d at 589.

G&G's second point is similarly unpersuasive. G&G has attempted to paint a picture that the Ohio and Delaware litigation "concern entirely different subjects and facts," (D.I. 40 at 9), but this is simply incorrect. The claims and anticipated defenses in both the Ohio Action and this action arise out of the loans to and investments in LoveSac DE made by the Ohio Plaintiffs and others, and the reasons they were made. (*See* D.I. 29 at 3-6). Accordingly, *Time Warner* controls the analysis of our Motion, and this litigation should therefore be dismissed under the first-to-file rule.[4]

Contrary to G&G's view, the Third Circuit's decision in *EEOC v. University of Pennsylvania*, 850 F.2d 969 (3d Cir. 1988) does not require a different result. In that

---

[4] G&G's argument that the first-to-file rule is inapplicable because the Ohio Action allegedly will not resolve all the issues between G&G and the Moving Defendants is simply G&G's argument that the doctrine requires identical issues cast in a different light. (*Compare* D.I. 40 at 7-9; *with id.* at 11). As shown above, it is not a valid point.

case, the defendant anticipated that the EEOC would seek to enforce a subpoena through an action in Pennsylvania, and filed suit in federal court in the District of Columbia challenging the EEOC's anticipated enforcement action on First Amendment grounds. *Id.* at 973. A month-and-a-half later, the EEOC filed a lawsuit in federal court in Pennsylvania to enforce its subpoena. *Id.* The defendant in the EEOC enforcement action moved to dismiss it, arguing that the first-to-file rule required that its constitutional claims pending in the District of Columbia should proceed before the federal court in Pennsylvania takes up the EEOC enforcement action. *Id.* The District Court denied the motion, and the defendant appealed to the Third Circuit, which affirmed the District Court's rejection of the first to file rule. *Id.* at 973-74. The reasoning of the Third Circuit, however, is inapposite on the facts of this case.

In affirming, the Third Circuit held that the District Court did not abuse its discretion in refusing to apply the first-to-file rule. The Court reasoned that there existed sufficient evidence that the defendant filed its action in the District of Columbia in bad faith, a long-recognized exception to the first-to-file rule, noting that:

> "viewing the totality of the circumstances, the district court did not abuse its discretion by declining to dismiss the second-filed suit. The timing of the University's filing in the District of Columbia indicates an attempt to preempt an imminent subpoena enforcement in the Eastern District of Pennsylvania. When it denied the University's request to modify the subpoena based on first amendment considerations, the EEOC threatened to institute a subpoena enforcement proceeding within twenty days unless the University responded. Instead of complying with the ruling or notifying the EEOC of its intent to contest the ruling, the University filed suit in the District of Columbia three days before the expiration of the grace period during which the EEOC stated it would not resort to a judicial enforcement proceeding. *Id.* at 977.

Perhaps equally as important as describing the basis for the *EEOC* decision is identifying what was *not* addressed in that case. The Third Circuit did not deal with any of the issues G&G raises in opposing application of the doctrine, such as the necessity of identical parties or claims. The presence or absence of identical parties and claims simply was not a factor in the *EEOC* decision, and the Third Circuit did not purport to lay down a rule of law on the issues before this Court. Rather, *EEOC* assumes that the first-to-file rule otherwise applied in that case (where, by the way, the claims were not identical between the two suits, *see id.* at 973-74) and used that case as a vehicle to analyze an exception to the first-to-file rule in a case where it may otherwise apply.[5]

      3.    The Ohio Action Is Not Stalled and the Delaware Litigation Has Not Proceeded So Rapidly as to Justify a Departure from the First-to-File Rule.

G&G incorrectly argues that the Court should decline to apply the first-to-file rule because the Ohio Action is "stalled." (D.I. 40 at 13). G&G claims the Ohio Action is "stalled" because G&G and Trent Gourley, the defendants in that action, have filed motions to dismiss. (*Id.*). As an initial matter, it should be noted that G&G has provided no authority finding that a case becomes stalled when a motion to dismiss is filed in it. Furthermore, even if one assumes that G&G's premise is legitimate, it would not

---

[5] G&G has not presented the Court with any evidence that the Ohio Action was filed in bad faith, making the *EEOC* decision distinguishable on that ground as well. And although G&G does accuse us of filing the Ohio Action in anticipation of this case, the *EEOC* decision serves as guidance on that point too. The defendant in *EEOC* was told by the EEOC that it had 20 days to comply with the subpoena, or face a lawsuit in Pennsylvania. Within that "grace period," the defendant ran to the District of Columbia to file its constitutional challenge to the subpoena that was already in hand, and which the defendant knew would be the subject of an enforcement action if they did not comply. Here, the Ohio Plaintiffs asserted causes of action in a court of competent jurisdiction two months before the second filed suit. G&G has cited no authority that parties like the Ohio Plaintiffs must wait around to be sued before asserting their own claims against a party that may or may not eventually file suit.

7

establish that this action has proceeded any farther than the Ohio Action. By G&G's logic, this case is also "stalled," as multiple motions to dismiss are pending in this Court too. G&G claims the situations can be differentiated because "the Moving Defendants themselves suggest that…Wilson Sonsini… and Lily Wong Langen should remain as defendants despite the filing of their Motion to Dismiss." (*Id.*). But Wilson Sonsini and Ms. Langen have now been dismissed from the case pursuant to a Joint Stipulation of Settlement and Dismissal. (D.I. 44). G&G's argument, therefore, lacks merit.

G&G also claims that this suit is more developed than the Ohio Action because "G&G has already engaged in discovery with each of the defendants to this proceeding." (D.I. 40 at 13). That discovery, however, was conducted in the Adversary Proceeding, not this action, and would be equally applicable here and in the Ohio Action, inasmuch as both cases arise out of the same set of facts, (*see* D.I. 29 at 3-6), and inasmuch as the claims G&G asserts in this case should be brought in Ohio. (D.I. 29 at 10-13; *infra* Part II.B.). Therefore, G&G's assertion that "discovery will have to begin anew in Ohio" is incorrect, and its concern that the first-to-file rule's primary purpose of reducing the burden on the federal judiciary will be compromised is misplaced.

> **B.    The Claims G&G Brings Against the Moving Defendants Here Are Compulsory Counterclaims that Should Be Brought in the Ohio Action.**

G&G contends that it is not required bring its claims as compulsory counterclaims in Ohio because "it cannot be assumed that the Ohio Court will be able to acquire jurisdiction over either G&G or the Non-Moving Defendants." (D.I. 40 at 13-14). G&G's argument, however, is based on a faulty premise – it assumes that the Southern District of Ohio is not in a position to determine the jurisdictional questions when and if they arise in the Ohio action. Instead, it is asking this Court, in the second-filed action, to

make an anticipatory ruling as to whether the United States District Court for the Southern District of Ohio may assert personal jurisdiction over G&G, and over other parties that G&G may bring to that litigation by way of third-party suit. Comity between federal courts of equal rank requires more. *See EEOC*, 850 F.2d at 971 (commenting that "federal courts have long recognized that…comity requires federal district courts…to exercise care to avoid interference with each other's affairs" and that "[t]he first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank"); *Genetech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) (noting that the first-to-file rule "helps to avoid the waste involved in duplicative suits, and the delay in providing prompt administrative justice").

G&G further asserts that its claims in this proceeding lack the requisite "logical relationship" with the claims in the Ohio Action to be deemed compulsory counterclaims. But as is true with its other arguments, G&G has failed to provide any support for its assertion. G&G claims that the fact that common witnesses will be required in both actions is irrelevant because "their testimony will be on entirely different issues," but fails to provide any evidence, or even an explanation, as to why that might be the case. (D.I. 40 at 15).

As the Moving Defendants have shown in their Opening Brief, G&G's assertions are incorrect. The resolution of the Ohio Plaintiffs' claim that G&G and Trent Gourley fraudulently induced them to invest in LoveSac Delaware on March 3, 2005 and to lend money to LoveSac Delaware in September/October 2005 (activities they performed in the ordinary course of their business as venture capitalists), will have a material impact on G&G's contrary allegation that the Ohio Plaintiffs and Millevere in fact engaged in those

9

transactions as part of a supposed conspiracy to defraud G&G. (*See generally* D.I. 29). Logically, one conclusion negates the other in whole or in part. Furthermore, the fact that the Ohio Action and the Delaware Action might require some of the same witnesses is relevant, because the issues in the two actions overlap, as was just explained. Consequently, there can be no doubt that G&G's claims are logically related to the Ohio Plaintiffs' claims, and, therefore, that they should be asserted in the Ohio Action as compulsory counterclaims.

### C. Alternatively, the Court Should Stay this Suit Pending the Outcome of the Ohio Action.

Should the Court decide not to dismiss this action, it should stay it pending the outcome of the Ohio Action. Many of G&G's arguments opposing a stay are duplicative of their arguments opposing dismissal, and we will not re-address them here since our position set forth above applies with equal force as to the stay issue. The discussion below will focus on other issues raised by G&G particular to a stay.

G&G claims that it will be prejudiced by a stay because it would be unable to bring its claims against the Ohio Plaintiffs and others in the first-filed action. (D.I. 40 at 16). As demonstrated above, however, G&G's claims are actually compulsory counterclaims that should be brought in the Ohio Action. (*Supra* Part II.B; *see also* D.I. 29 at 10-13). As such, they are improperly before this Court, and therefore, an order staying those claims in this forum will not prejudice G&G. Moreover, even if they are not compulsory counterclaims, they may be brought against the Ohio Plaintiffs by way of permissive counterclaims. Likewise, G&G can litigate with parties other than the Ohio Plaintiffs in the first-filed action by way of a third-party complaint.

    G&G also contends that a stay is inappropriate because discovery in this case has commenced through the Adversary Proceeding while discovery in the Ohio Action has yet to begin. (D.I. 40 at 16). This argument is flawed. The Adversary Proceeding has been dismissed with prejudice, and this proceeding is a distinct action. Perhaps even more to the point, the Adversary Proceeding discovery is equally applicable to both the Delaware Action and the Ohio Action, given that the claims asserted in the two actions are interrelated, (*supra* Part II.B), so G&G's position on this point actually favors application of the first-to-file rule.

    Finally, G&G states that judicial economy will not be advanced by staying this suit because doing so will leave too much uncertainty as to whether G&G's claims will be heard in the Ohio Action. The only way G&G's claims will not be addressed in that proceeding, however, is if G&G chooses not to assert them.

### III. <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons set forth in our Opening Brief, the Court should grant the Motion to Dismiss or Stay this litigation in favor of the first-filed action in Ohio.

Respectfully submitted,

*/s/ Joseph Naylor*

Michael A. Weidinger (I.D. No. 3330)
Joseph S. Naylor (I.D. No. 3886)
MORRIS, JAMES LLP
500 Delaware Avenue
Suite 1500
P.O. Box 2306
Wilmington, DE 19801
Tel: (302) 888-6800
Fax: (302) 571-1750
mweidinger@morrisjames.com
jnaylor@morrisjames.com

-and-

Michael L. Scheier (0055512)
Joseph L. Bruemmer (0079120)
KEATING MUETHING & KLEKAMP PLL
One East Fourth St.
Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6952
Fax: (513) 579-6457
mscheier@kmklaw.com
jbruemmer@kmklaw.com

*Attorneys for Defendants,*
Brand Equity Ventures II, LP, Walnut Investment Partners, LP, Walnut Private Equity Fund, LP, The Walnut Group, Millevere Holdings Limited, David Yarnell, James Gould, Simon Wright, & Walt Spokowski

12